2001 ME 132

Karen RICHARDS

v.

TOWN OF ELIOT et al.

Supreme Judicial Court of Maine.

Submitted on Briefs: Dec. 20, 2000.

Decided: Sept. 10, 2001.

Brian T. Stern, Esq., Portsmouth, NH, for plaintiff.

John J. Wall III, Esq., Christopher C. Dinan, Esq., Monaghan Leahy, LLP, Portland, for defendants.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

CALKINS, J.

[¶ 1] Karen Richards appeals from the summary judgment entered in the Superior Court (York County, *Fritzsche, J.*) in favor of the Town of Eliot and Eliot Police Officers Michael Stacy and Wayne Godfrey on all counts of Richards' complaint alleging police misconduct. We affirm in part and vacate in part.

## I. BACKGROUND

[¶ 2] Many of the facts are disputed. For the purposes of this appeal from the grant of a summary judgment motion, we recite the disputed facts in the light most favorable to Richards, the nonprevailing party.[1]

[¶ 3] On October 2, 1996, Karen Richards' son, Daniel, left his three-year-old daughter at Richards' residence in the care of Richards' seventeen-year-old daughter, Kimberly. Daniel was separated from his wife, Jennifer, the mother of their three-year-old. Daniel often spent the night at Richards' house with the child.

[¶ 4] At around 11:30 P.M., Jennifer arrived at Richards' residence to pick up her daughter. Believing that Jennifer was intoxicated, Richards told Jennifer that she would have to wait until Daniel returned. After getting into a physical confrontation with Kimberly in the driveway, Jennifer left. Soon thereafter, Jennifer telephoned the Eliot Police Department and spoke with Officer Michael Stacy. Jennifer told Stacy that she went to Richards' residence to pick up her child, but Richards refused

---

1. These facts are taken primarily from Richards' statement of material facts filed pursuant to M.R. Civ. P. 7(d) which was the effective rule at the time the statement was filed. Rule 7(d) was abrogated effective January 1, 2001; M.R. Civ. P. 56(h) now governs statements of material facts.

to give her the girl. Jennifer further told Stacy that Richards physically kicked her off the porch. In response to further questioning, Jennifer told Stacy that there was no custody order regarding her daughter.

[¶ 5] Stacy went to Richards' house accompanied by Eliot Police Officer Wayne Godfrey with the intention of retrieving the child. Neither Stacy nor Godfrey knew the age of the child, but it is undisputed that Godfrey knew that the child was not yet school age. Stacy and Godfrey knocked on the door for several minutes before Richards answered. Richards stepped onto the unlit porch, and Stacy used his flashlight to illuminate her. Richards had a cordless telephone with her. When Stacy asked Richards why she had not turned the child over to the child's mother, Richards told the officers that she was not responsible for the child, was not watching her, and did not have the authority to turn her over to anyone. She did not inform them that Kimberly was babysitting the child inside the house. For several minutes Richards asked the officers to try to contact her son, Daniel, but they refused. Richards then stepped off the porch and began walking toward her mother's house next door. As she walked, she dialed her boyfriend's number on her telephone.

[¶ 6] Richards had walked about seventy-five feet across the yard when one of the officers said, "If you don't stop right there, you will be under arrest." Richards immediately stopped walking. At that same time, Richards' boyfriend answered the phone, and Richards pleaded with him to come to her house. Stacy stepped in front of Richards. Richards turned away from him, but she did not take a step.

[¶ 7] Suddenly, Richards was struck from behind with substantial force. She landed face down on the ground with her hands beneath her body. While she was on the ground, the officers pulled her hands out from under her and pressed their knees into her side and her back. The officers never asked Richards to put her hands behind her back, nor did she resist their efforts to put her in handcuffs. They lifted her off the ground by the handcuffs, rather than by her arms, and took her to a police cruiser. She suffered severe pain in her shoulders. She complained that her handcuffs were too tight.

[¶ 8] The officers transported Richards to the Kittery Police Department where she was charged with criminal restraint in violation of 17–A M.R.S.A. § 302 (1983 & Supp.2000). Subsequently, the York County District Attorney's Office declined to prosecute Richards.

[¶ 9] When Richards was released from the police department, she went directly to the hospital emergency room complaining of pain in her ribs, back, and shoulders. The doctor diagnosed shoulder strain and wrist contusion. Richards had visible bruises on her ribs, wrist, shoulders, neck, back, and face.

[¶ 10] Richards filed a nine-count complaint against the Town of Eliot, Stacy, and Godfrey. The claims asserted against all defendants are for unlawful arrest, excessive force, negligent infliction of emotional distress, violation of constitutional rights, and violation of 15 M.R.S.A. § 704 (1980). Two claims are asserted against the Town for negligent hiring and supervision. In addition, there are two claims asserted only against the two officers: malicious prosecution and violation of municipal procedures.[2] The Town and

---

2. We do not separately address the count in Richards' complaint for violation of the Town of Eliot's procedures insofar as it alleges a state law claim. Richards has provided no

the individual officers moved for summary judgment on all counts of Richards' complaint on the grounds that the facts do not give rise to the claims and that the Town and officers are entitled to immunity. The court granted the motion, giving judgment to the defendants on all counts. Richards' motion for reconsideration was denied.

## II. STANDARD OF REVIEW

[¶ 11] On appeal from a grant of a summary judgment, "[w]e review the evidence in the light most favorable to the nonprevailing party to determine whether the record supports the conclusion that there is no genuine issue of material fact and that the prevailing party was entitled to judgment as a matter of law." *Northup v. Poling*, 2000 ME 199, ¶ 6, 761 A.2d 872, 874. "The trial court appropriately enters summary judgment when 'the party that bears the burden of proof on an essential element at trial has presented evidence that, if she presented no more, would entitle the opposing party to a judgment as a matter of law.'" *Smith v. Cannell*, 1999 ME 19, ¶ 6, 723 A.2d 876, 878–79 (quoting *June Roberts Agency, Inc. v. Venture Props., Inc.*, 676 A.2d 46, 48 (Me.1996)).

evidence or information regarding the promulgation of the Town police procedures or the authority for the promulgation. Furthermore, she has made no argument in this Court or the Superior Court that a violation of the Town's procedures gives rise to a cause of action for damages. Because she has not pointed to any authority in the procedures themselves or the authorizing legislation or any other statute or authority that a violation of the Town's procedures, in and of itself, gives rise to a cause of action for damages, we do not address the claim. *See Goodwin v. Sch. Admin. Dist. No. 35*, 1998 ME 263, ¶¶ 18, 19, 721 A.2d 642, 647 (holding that state education regulations do not provide a cause of action for attorney fees in absence of explicit authority creating such a remedy).

## III. CLAIMS AGAINST THE INDIVIDUAL POLICE OFFICERS

A. Claims Alleging Violation of Richards' Constitutional Rights

[¶ 12] Richards claims that her constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution were violated by Officers Stacy and Godfrey because they arrested her unlawfully, used excessive force on her, and prosecuted her maliciously. Although she does not expressly articulate in her complaint that these claims are brought pursuant to 42 U.S.C.A. § 1983 (Pamph. 2001), Richards' memorandum of law in the Superior Court and her brief in this Court state that such claims are section 1983 claims.[3] We will discuss each of the section 1983 claims separately, followed by a discussion on qualified immunity.

1. Unlawful Arrest

[¶ 13] In an unlawful arrest action brought pursuant to section 1983, "summary judgment is appropriate only if no reasonable jury could find that the officers did or did not have probable cause to arrest." *McKenzie v. Lamb*, 738 F.2d 1005, 1008 (9th Cir.1984). We have said

3. Section 1983 of Title 42 of the United States Code provides in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

42 U.S.C.A. § 1983 (Pamph.2001).

that "[p]robable cause to arrest exists when facts and circumstances of which the arresting officer has reasonably trustworthy information would warrant an ordinarily prudent and cautious police officer to believe the subject did commit or was committing a crime." *State v. Boylan,* 665 A.2d 1016, 1019 (Me.1995). "[T]he existence of probable cause (and, in turn, the validity of an ensuing arrest) is gauged by an objective standard; as long as the circumstances surrounding the event warrant the officer's reasonable belief that the action taken is appropriate, the arrest is justified." *Logue v. Dore,* 103 F.3d 1040, 1044 (1st Cir.1997).

■ [¶ 14] Officers Stacy and Godfrey arrested Richards for criminal restraint. It is a crime for a person, who knows she has no legal right to do so, to knowingly or intentionally retain a person under age fourteen. 17–A M.R.S.A. § 302(1)(A)(1) (Supp.2000).[4] The information given to Stacy by Jennifer, which was reasonably trustworthy, was that there was no court order regarding the custody of the child. Stacy and Godfrey were aware, or should have been aware, that in the absence of a court order to the contrary, parents are the natural custodians of a child. 19–A M.R.S.A. § 1651 (1998). This means that they could have reasonably believed that any person, other than the child's father, who refused Jennifer's request to turn the child over to her, was illegally restraining the child.

[¶ 15] The knowledge of Stacy and Godfrey before they arrived at Richards' residence was that Jennifer had gone to Richards' residence a short time earlier to pick up her child; that Richards had refused to give the child to the mother; and that there was no custody order. Once they arrived at Richards' home and asked Richards why she did not hand over the child to Jennifer, Richards stated that she did not have the authority to do so. Rather than trying to explain the situation to the officers, Richards began walking away from them across the lawn. Based on the objective facts, no reasonable jury could find that the officers lacked probable cause to arrest Richards for criminal restraint.

[¶ 16] Richards seems to argue that the officers lacked probable cause to arrest her because they did not directly ask Richards to get the child and turn her over to them. However, it was objectively reasonable for the officers to believe that Richards understood from their questions that the purpose of their visit was to retrieve the child. When Richards asserted that she did not have the authority to turn over the child to anyone and walked away from the officers while they were speaking to her, they were justified in believing that Richards was knowingly retaining the child in her residence with no legal right to do so in violation of 17–A M.R.S.A. § 302. The Superior Court did not err, therefore, in granting summary judgment to the officers on the claim of illegal arrest.[5]

4. If the person retained is under the age of eight, the crime is Class C; otherwise it is Class D. 17–A M.R.S.A. § 302(3) (Supp.2000).

5. Richards also argues that the officers did not know the age of the child, and therefore, could not arrest her without a warrant for a Class C offense not committed in their presence. However, the undisputed evidence is that Godfrey knew that the child was preschool age. At any rate, the age of the child is immaterial because the Class D offense was committed in the presence of the officers. *See* 17–A M.R.S.A. § 15(1)(B) (Supp.2000) (permitting warrantless arrests for Class D offenses committed in presence of officer).

Richards' additional argument that the officers failed to adequately investigate is without merit. Richards' own description of events reveals that she hindered their investigation by providing minimal information in response to their questions and by walking away from the officers rather than speaking to them.

## 2. Excessive Force

[¶ 17] For Richards' excessive force claim, the issue is whether the evidence, in the light most favorable to Richards, raises a genuine dispute as to the reasonableness of the force used by the officers. *See Foster v. Metro. Airports Comm'n,* 914 F.2d 1076, 1081 (8th Cir.1990). The reasonableness of the force used by a police officer is analyzed in light of the "objective reasonableness" standard of the Fourth Amendment. *Graham v. Connor,* 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). "[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* The Supreme Court articulated the Fourth Amendment reasonableness test as "requir[ing] careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396, 109 S.Ct. 1865.

[¶ 18] Richards also points to the criteria contained in the Town of Eliot's written police procedures concerning the use of force and argues that Godfrey and Stacy's violation of those procedures demonstrates that the force they used was not reasonable.[6] The Town's police procedures rely upon the above-quoted factors from *Graham v. Connor* as guidelines to determine whether force has been excessively applied. In addition, the procedures also state: "In evaluating the reasonable application of force, officers must consider factors, such as: age, size, strength, skill level with department weapons, state of health, and the number of officer[s] opposing the number of suspects."

[¶ 19] Viewing the evidence in the light most favorable to Richards, she did not resist arrest or attempt to evade arrest. Although Richards walked away from the officers, she was not under arrest or seized at that time. When the officers told her she would be arrested if she did not stop, she immediately stopped walking. While the crime of criminal restraint is far from a petty offense, the information that the officers had regarding the manner of the commission of the crime demonstrated that it was not committed with any threat of secreting the child or violence toward the child. Although Jennifer had reported that Richards kicked her off the porch, Richards did not act violently toward the officers at any time; she did not pose an obvious safety threat to the officers; and she was alone. Thus, the facts and circumstances of this particular arrest, in the light of the evidence most favorable to Richards, are such that a jury could rationally determine that the force used by Stacy and Godfrey was unreasonable and excessive.

[¶ 20] The officers argue that the nature of Richards' physical injuries, demonstrate that excessive force was not used. The extent of injuries may be considered in determining whether the force used was reasonable under the facts and circumstances of a particular case. *See Dean v. City of Worcester,* 924 F.2d 364, 369 (1st Cir.1991) (finding minor physical injuries insufficient to support an inference that the officers used inordinate force, where the officers mistook plaintiff for an es-

---

6. Richards does not appear to argue that the violation of the municipal police procedures by Stacy and Godfrey constitutes a deprivation of Richards' constitutional rights, but rather that the violation of the procedures is evidence of the unreasonableness of the force used by the officers.

caped, armed felon, whom the officers reasonably believed would resist with deadly force). Although Richards suffered relatively minor bodily injuries as a result of the officers' actions, the extent of the injuries is not the only indication of excessive force. Considering the nonviolent nature of the offense, Richards' lack of physical resistance to the arrest, and the scarcity of circumstances suggesting a safety threat to the officers, a jury could reasonably find that the force allegedly used by the officers was unreasonable.

### 3. Malicious Prosecution

 [¶ 21] Maliciously prosecuting a person does not mean that the person's constitutional rights are violated unless "misuse of the legal proceedings is so egregious as to subject the individual to a deprivation of a constitutional dimension ....." *Torres v. Superintendent of Police of Puerto Rico,* 893 F.2d 404, 409 (1st Cir.1990). Insofar as Richards claims that the malicious prosecution by Godfrey and Stacy violated her rights to substantive or procedural due process under the Fourteenth Amendment to the United States Constitution, such claim cannot stand. "There is no substantive due process right under the Fourteenth Amendment to be free from malicious prosecution ....." *Roche v. John Hancock Mut. Life Ins. Co.,* 81 F.3d 249, 256 (1st Cir.1996) (citing *Albright v. Oliver,* 510 U.S. 266, 268–75, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (plurality op.)). Likewise, a section 1983 claim for malicious prosecution based on a deprivation of procedural due process will not lie when, as here, there is a state law claim for malicious prosecution. *Meehan v. Town of Plymouth,* 167 F.3d 85, 88 (1st Cir.1999).

 [¶ 22] If Richards' section 1983 malicious prosecution claim is based on a deprivation of Fourth Amendment rights, it also fails. Such a claim requires a showing that the prosecution was initiated without probable cause. *Id.* at 88–89. As stated above, Godfrey and Stacy had probable cause to arrest Richards, and the appropriate authorities had probable cause to initiate criminal proceedings against her.

### 4. Defense of Qualified Immunity

 [¶ 23] Having determined that there is a genuine issue of material fact on one of Richards' section 1983 claims against the police officers, that is, the excessive force claim, we must determine whether the officers are nevertheless entitled to qualified immunity for their conduct. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

 [¶ 24] In a recent case the Supreme Court articulated the twofold inquiry that must be made when police officers raise a defense of qualified immunity to a claim of excessive force. *Saucier v. Katz,* —— U.S. ——, ——, 121 S.Ct. 2151, 2155, 150 L.Ed.2d 272 (2001). The threshold question is: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* at 2156. We have conducted this inquiry in our discussion at Part III, A, 2, above and determined that the facts taken in the light most favorable to Richards demonstrate that her Fourth Amendment rights were violated by the force utilized by Stacy and Godfrey.

[¶ 25] The second question, enunciated in *Saucier v. Katz*, "is to ask whether the right was clearly established." *Id.* This question cannot be answered with the general proposition that the use of force is a violation of a person's constitutional rights if the force is excessive under the objective standards of reasonableness. Rather, it must be answered "in light of the specific context of the case." *Id.* "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.*

[¶ 26] Our review of the excessive force cases decided before the date that Richards was arrested, particularly the Maine cases, convinces us that the right was clearly established. The federal court for the District of Maine has held that police officers in similar situations using similar degrees of force had violated plaintiffs' constitutional rights. In each of the following cases the court denied summary judgment to the police officers on the excessive force claim and the qualified immunity defense, thereby determining that the plaintiff's version of the facts was sufficient, if believed by the factfinder, to support a judgment against the officers: *Comfort v. Town of Pittsfield*, 924 F.Supp. 1219 (D.Me.1996) (after arresting plaintiff for operating under the influence, police rammed plaintiff's head into door jamb, causing him to fall and hit his head on the floor); *Barber v. Guay*, 910 F.Supp. 790 (D.Me.1995) (after arresting plaintiff for theft, deputy wrenched plaintiff's shoulder; twisted his wrist behind his back; and threw him into the cruiser head first);[7] *Brooks v. Bailey*, No. 95–22–P–H 1995 WL 746340 (D.Me. Dec. 8, 1995) (in arresting plaintiff for criminal trespass, police pushed him against a tree; jerked his handcuffs; banged his head against the cruiser; pushed him into cruiser so he ended up face down on floor; and pulled him out by his feet causing him to fall face down on ground); *McPherson v. Auger*, 842 F.Supp. 25 (D.Me.1994) (police handcuffed plaintiff's wrists too tightly and refused to loosen them after plaintiff was arrested for refusing to sign a traffic ticket); *McLain v. Milligan*, 847 F.Supp. 970 (D.Me.1994) (in arresting plaintiff for disorderly conduct, police twisted plaintiff's arms behind his back; picked him up off the floor and carried him out of apartment; kicked his legs out from under him; forced him to his knees; slammed his chest and face onto concrete; kneed him in his back; and slammed his face onto the pavement).

[¶ 27] These cases made clear that, when arresting a person for a nonviolent offense when she is not attempting to flee or resisting arrest and is not a threat to the officers' safety, striking her with sufficient force to knock her to the ground, kneeing her in the ribs while she was face-down on the ground, lifting her by the handcuffs, and causing severe pain, constitutes conduct that is excessive and unreasonable. The number of cases with similar factual scenarios, all concluding that the force used by the police was excessive, would have made it clear to a reasonable police officer, at the time of the Richards incident, that the alleged force against Richards, in the situation alleged by Richards, was unlawful.

[¶ 28] Thus, having examined both prongs of the qualified immunity inquiry, we conclude that the facts, viewed in the light most favorable to Richards, show that the force used by Stacy and Godfrey, when

---

7. The court noted that the plaintiff posed no threat; was not involved in a violent crime; did not resist arrest or attempt to flee; and there were two officers present. 910 F.Supp. at 800–01.

viewed under objective standards of reasonableness, was excessive, and that it would be clear to a reasonable officer, at the time these events took place, that the force used against Richards, given all of the facts surrounding that situation, was unlawful.

[¶ 29] In summary, the Superior Court correctly granted summary judgment to Godfrey and Stacy on the section 1983 claims for illegal arrest and malicious prosecution. The police officers, however, were not entitled to summary judgment on the section 1983 claim of excessive force, and that portion of the court's judgment will be vacated.

## B. State Law Claims

[¶ 30] Apart from the section 1983 claims, Richards also claims that Godfrey and Stacy are liable under state common law for illegal arrest, excessive force, and malicious prosecution, and negligent infliction of emotional distress. In addition, she claims the officers are liable under 15 M.R.S.A. § 704 (1980) for arresting her without a warrant. We discuss each of these claims in turn, and we discuss the defense of immunity of the officers under the Maine Tort Claims Act, 14 M.R.S.A. § 8111(1) (Supp.2000).

### 1. Illegal Arrest, Excessive Force, and Immunity

[¶ 31] The analysis of the state law claims of illegal arrest and excessive force is the same as for the federal law claims. As we discussed above, a jury could not reasonably find that Godfrey and Stacy lacked probable cause for Richards'

arrest. Thus, the officers are entitled to summary judgment on a state law claim for illegal arrest. However, Richards has demonstrated genuine and material factual issues on the excessive force claim, and the officers are not entitled to summary judgment on that state law claim.[8]

[¶ 32] The police officers are not entitled to summary judgment on the excessive force claim based on their defense of immunity under the Maine Tort Claims Act, which gives governmental employees absolute immunity when performing a discretionary act, 14 M.R.S.A. § 8111(1)(C) (Supp.2000), as long as that act is "encompassed by the duties of the governmental employee," § 8111(1). If a police officer's conduct exceeds the scope of his discretion, he may lose the immunity. *See Polley v. Atwell,* 581 A.2d 410, 413–14 (Me.1990). If the officer uses excessive force in executing an arrest, such action is beyond the scope of the officer's discretion. In determining whether a police officer has used excessive force, the same "reasonableness" factors articulated in *Graham v. Connor* are relevant. 490 U.S. at 396, 109 S.Ct. 1865. Officers whose actions are " 'objectively reasonable' in light of the facts and circumstances confronting them," *id.,* are not acting beyond the scope of their discretion and are immune under the Maine Tort Claims Act. In this case there is a genuine issue of material fact as to whether Godfrey and Stacy used excessive force against Richards. *See Hodsdon v. Town of Greenville,* 52 F.Supp.2d 117, 126 (D.Me.1999) (finding genuine issue of material fact on scope of

---

**8.** The state law claim of excessive force is a subset of the common law tort that we refer to as assault and battery. *See Paradis v. Beaulieu,* 120 Me. 70, 71, 112 A. 718, 719 (1921). A battery may be committed by a mere touching of another. *See* JACK H. SIMMONS ET AL., MAINE TORT LAW § 1.01 (2001). Law enforcement officials, however, are immune from liability from such touching within the scope of their discretion. Because that discretion is exceeded when excessive force is used, the tort has come to be called excessive force when alleged against an officer.

officer's discretion where plaintiff alleged that officer kicked him, banged his head on hood of car, handcuffed him with unnecessary force, and repeatedly slammed his face into the ground); *Comfort,* 924 F.Supp. at 1237 (finding genuine issue of material fact on scope of officers' discretion based on allegation that officers handcuffed plaintiff, hit him in head, and shoved his head against door jamb).

### 2. Malicious Prosecution

[¶ 33] To succeed in her state law claim for malicious prosecution, Richards must prove "that criminal proceedings were instituted against [her] without probable cause and with malice, [and] that [she] received a favorable termination of the proceedings." *Nadeau v. State,* 395 A.2d 107, 116 (Me.1978). As discussed above, the evidence, considered in the light most favorable to Richards, is insufficient to raise a genuine dispute with regard to probable cause. Although the district attorney declined to prosecute Richards and no criminal proceedings were actually initiated against her, there was probable cause to do so, just as there was probable cause to arrest her. For this reason, the Superior Court properly granted summary judgment to Godfrey and Stacy on the state law claim of malicious prosecution.

### 3. Negligent Infliction of Emotional Distress

[¶ 34] The Superior Court interpreted Richards' request for emotional distress damages as a claim for negligent infliction of emotional distress and granted summary judgment to Godfrey and Stacy.

Except in bystander cases, *see Culbert v. Sampson's Supermarkets Inc.,* 444 A.2d 433 (Me.1982), the tort of negligent infliction of emotional distress requires either a unique relationship between the plaintiff and the defendant, or an underlying tort, *see Bryan R. v. Watchtower Bible & Tract Soc'y,* 1999 ME 144, ¶ 31, 738 A.2d 839, 848, *cert. denied,* 528 U.S. 1189, 120 S.Ct. 1242, 146 L.Ed.2d 101 (2000). In this case there is no suggestion of a unique relationship between Richards and either of the police officers. Although the excessive force claim can be viewed as an underlying tort, if Richards prevails on that claim and proves that she suffered emotional distress, she is entitled to an award of damages for the emotional distress. Thus, any claim she may have made for the negligent infliction of emotional distress is subsumed in her excessive force claim. *See Rippett v. Bemis,* 672 A.2d 82, 87–88 (Me.1996). The Superior Court was correct in its grant of summary judgment.

### 4. Statutory Claim Under 15 M.R.S.A. § 704

[¶ 35] Richards asserts a statutory cause of action under 15 M.R.S.A. § 704 (1980) claiming that Godfrey and Stacy acted wantonly or oppressively in arresting her. The statute provides that every police officer shall arrest and detain persons found violating any law of the State until a warrant can be obtained; however, an officer who acts "wantonly or oppressively" in arresting a person, or detains a person without a warrant longer than is necessary to procure it, shall be liable in damages.[9]

---

**9.** 15 M.R.S.A. § 704 provides,

Every sheriff, deputy sheriff, constable, city or deputy marshal, or police officer shall arrest and detain persons found violating any law of the State or any legal ordinance or bylaw of a town, until a legal warrant can be obtained and may arrest and detain such persons against whom a warrant has been issued though the officer does not have the warrant in his possession at the time of the arrest, and they shall be entitled to legal fees for such service; *but if, in so doing, he acts wantonly or oppressively,* or detains a person without a warrant longer

The officers offer two defenses against this claim: (1) their alleged actions do not rise to the level of wanton or oppressive conduct; and (2) section 704 no longer remains in effect after the enactment of the Maine Tort Claims Act.

[¶ 36] On appeal, Richards argues that the officers violated 15 M.R.S.A. § 704 by detaining her without obtaining a warrant. As discussed above, the officers had probable cause to arrest Richards for criminal restraint. Because the offense was committed in the presence of the officers, they did not need a warrant. *See* 17-A M.R.S.A. § 15(1)(B) (Supp.2000). Once arrested, Richards was transported to the Kittery Police Department where she was booked on the charge of criminal restraint and then released from custody. These facts are insufficient to support a claim that Richards was detained without a warrant longer than necessary in violation of 15 M.R.S.A. § 704. The Superior Court did not err, therefore, in granting summary judgment to the officers on the section 704 claim.[10]

## IV. CLAIMS AGAINST THE MUNICIPALITY

[¶ 37] Richards claims that the Town of Eliot, in addition to Godfrey, and Stacy, violated her constitutional rights by unlawfully arresting her and using excessive force against her. She also brings her state law claims of illegal arrest, excessive force, negligent infliction of emotional distress, and violation of section 704 against the Town. In addition, she claims that the Town negligently supervised and trained Godfrey and Stacy.

### A. Section 1983 Claims

[¶ 38] "[A] municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue. Respondeat superior or vicarious liability will not attach under § 1983." *Canton v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). Therefore, because the section 1983 claims of illegal arrest and excessive force are based solely upon the actions of the Town's employees, the Town is not liable. Summary judgment on behalf of the Town is appropriate on Richards' section 1983 claims for illegal arrest and excessive force.

[¶ 39] A municipality can be liable under section 1983 for inadequate police training, but "only where the failure to train amounts to *deliberate indifference* to the rights of persons with whom the police come into contact." *Id.* at 388, 109 S.Ct. 1197 (emphasis added). None of the statements of material fact provided by Richards in her Rule 7(d) statement allege any facts from which it could be inferred that, to the extent the Town failed to train or supervise its police officers, such failure rose to the level of deliberate indifference. Her statement recites that Stacy received minimal training on probable cause, the use of nondeadly force, and how to diffuse a situation. Although Richards alleges

than is necessary to procure it, *he shall be liable to such person for the damages suffered thereby.*
(emphasis added).

**10.** Richards does not argue on appeal that the officers' use of excessive force in effecting her arrest constitutes wanton or oppressive conduct in contravention of section 704. Because Richards does not brief this issue, we

need not consider whether the officers' alleged actions rise to the level of wanton or oppressive conduct, or whether section 704 was abrogated by the passage of the Maine Tort Claims Act, 14 M.R.S.A. §§ 8101–8118 (1980 & Supp.2000). *See Biette v. Scott Dugas Trucking & Excavating, Inc.,* 676 A.2d 490, 494 (Me.1996) (issues that are not briefed are not considered on appeal).

that the Town does not enforce its policy of reporting the use of force by officers, this does not amount to deliberate indifference, particularly in light of the fact that no other incident of excessive force is alleged, whether by these police officers or other Town officers. Generally speaking, a single incident of excessive force is insufficient to impose section 1983 liability on a municipality. *See City of Okla. City v. Tuttle,* 471 U.S. 808, 823–24, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). Richards presents insufficient evidence to support her claims of municipal liability based on the alleged inadequate training and supervision of Officers Stacy and Godfrey.

B. State Law Claims

[¶ 40] The state law claims against the Town for illegal arrest, excessive force, negligent infliction of emotional distress, and violation of 15 M.R.S.A. § 704 are all based upon respondeat superior. We have determined that Richards did not present sufficient evidence to defeat the officers' motion for summary judgment on the illegal arrest and section 704 claims, and we have concluded that any claim for negligent infliction of emotional distress is subsumed in the excessive force claim. It follows, therefore, that Richards cannot show liability of the Town for the officers' actions on those claims.

[¶ 41] With regard to the claim of excessive force, we must determine whether the Town can be liable for the acts of its two employees. Likewise, we must determine whether the Town is entitled to immunity on Richards' claim of negligence based on the Town's inadequate training and supervision of the police officers.

[¶ 42] Pursuant to the Maine Tort Claims Act, towns are immune from suit on tort claims unless the Act expressly removes immunity. 14 M.R.S.A. § 8103(1) (1980); *Danforth v. Gottardi,* 667 A.2d 847,

848 (Me.1995). There are two provisions of the Act that provide exceptions to the immunity of a municipality. Section 8104–A lists various exceptions to immunity, but none are relevant to Richards' claims. 14 M.R.S.A. § 8104–A (Supp.2000). The other possible exception to immunity is section 8116, which provides that, to the extent a municipality has obtained insurance for tort claims against it, the municipality is liable to the limits of the insurance coverage. 14 M.R.S.A. § 8116 (Supp. 2000); *Napier v. Town of Windham,* 187 F.3d 177, 191 (1st Cir.1999); *Moore v. City of Lewiston,* 596 A.2d 612, 614–15 (Me. 1991). Richards did not argue either to the Superior Court or this Court that section 8116 is applicable to this case, and, therefore, we decline to examine whether the Town may have waived its immunity. The Superior Court correctly granted summary judgment to the Town of Eliot.

The entry is:

Judgment, as against the individual defendants, vacated on the excessive force claims. Judgment affirmed in all other respects.