**Patricia McDERMOTT, Plaintiff**

v.

**TOWN OF WINDHAM, Richard Lewsen, in his official capacity as Chief, Windham Police Department, and Paul Cox, in his official capacity as a Windham Police Officer, Defendants**

**No. CIV.01–253–P–C.**

United States District Court,
D. Maine.

May 31, 2002.

---

Henry N. Berry, III, Esq., Lee H. Bals, Marcus, Clegg & Mistretta, P.A., Portland, ME, for Plaintiff.

Robert M. Hayes, Esq., Matthew Tarasevich, Esq., Moon, Moss, McGill, Hayes & Shapiro, P.A., Portland, ME, for Defendants.

### MEMORANDUM OF DECISION AND ORDER

GENE CARTER, District Judge.

Plaintiff Patricia McDermott has filed civil rights claims against Defendants, the

Town of Windham ("Town"), Police Chief Richard Lewsen ("Lewsen"), and Police Officer Paul Cox ("Cox"), based on circumstances arising out of her arrest for criminal trespass on July 25, 2001. Specifically, Plaintiff asserts against the Town, Lewsen, and Cox claims for violations of her civil rights under 42 U.S.C. §§ 1983, 1985(2), 1985(3), & 1986 (Count I), and claims for violations of her civil rights under the Maine Constitution, Article I, §§ 1, 4, 5, and 6A (Count II). Plaintiff also asserts against Defendants Town and Cox tort claims, alleged to have been committed by Cox while in the scope of his employment by the Town, including: false arrest (Count III); false imprisonment (Count IV); negligent infliction of emotional distress (Count V); assault and battery (Count VI); intentional infliction of emotional distress (Count VII); and malicious prosecution (Count VIII).

Now before the Court is Defendants' Motion for Summary Judgment (Docket No. 4), in which Defendants claim entitlement to summary judgment on all of Plaintiff's claims.[1] Defendants assert as an affirmative defense that Cox and Lewsen are entitled to qualified immunity on Counts I and II. For the reasons that follow, the Court will grant, in part, and deny, in part, Defendants' Motion for Summary Judgment.

## I. Statement of Facts

In the afternoon of July 25, 2001, Plaintiff Patricia McDermott drove to Overlook Road in Windham, Maine, parked her car, and walked into the woods on or around Lot 22. Affidavit of Patricia McDermott ("McD.Aff.") ¶¶ 8, 13. James Farley ("Farley"), whose family owned property on Overlook Road, approached Plaintiff and yelled at her. McD. Aff. ¶ 13; Paul Cox Deposition ("Cox Dep.") at 42, 49–50. Farley then called the Windham Police Department, and reported that a car was blocking the road. Cox Aff. ¶ 1. About 4:00 p.m. or shortly thereafter, Officer Paul Cox was dispatched to Overlook Road, regarding Farley's complaint of the car blocking the road. Cox Dep. at 37; Cox Aff. ¶ 1; Police Report Exhibit 1 thereto. Cox knew that the Farley family lived on Overlook Road. Cox Dep. at 50–51. When Cox arrived at the scene, he did not see a car blocking the road.[2] Cox Dep. at 41; Cox Aff. ¶ 2. McDermott's car was parked either off to the side of Overlook Road or on a dirt path leading into the woods. Cox Dep. at 41; McD. Aff. ¶ 8.

After getting out of his car, Cox and McDermott made eye contact, and McDermott emerged from the woods. Cox Dep. at 41, 43, 46–47; Cox Aff. ¶ 3; McD. Aff. ¶ 14. Near to where McDermott and Cox stood, two "No Trespassing" signs, bearing the name "O'Connell" as the property owner, were posted. McD. Aff. ¶ 11; McD. Dep. at 34–35, 46–47; Cox Dep. at 53–55. Across the road from Cox and McDermott, was a tree with two signs, one that said "No Trespassing," and one that said "Farley." McD. Aff. ¶ 11, Cox Dep. at 53–55. A rock with the words "Keep Out" spray painted on it was also nearby. McD. Aff. ¶ 12; Cox Dep. at 53, 55–57. The area at the end of the road, which is Lot 22, did not appear to be posted "No Trespassing." McD. Dep. at 21, 35. Cox approached McDermott, who stated that the property belonged to her.[3] Cox Dep. at 53; McD.

---

1. Defendant Town did not make any arguments with respect to Counts III and VII.

2. The parties dispute whether Cox spoke directly to Farley at any time during the course of responding to this call. *See* discussion *infra,* at section II.A.1.a.n.13.

3. Katherine Noel, McDermott's niece, holds legal title to Lot 22, and Defendants admit

Dep. at 42. McDermott told Cox that she had just hired someone to perform a survey because of a boundary dispute with the neighboring property owner and that she was looking for survey marks. Cox Dep. at 53–58; McD. Dep. at 44–45. Cox pointed out the "No Trespassing" sign bearing the name O'Connell. Cox Dep. at 53–55; McD. Aff. ¶ 7. McDermott told Cox that the tree and the sign were on her property.[4] McD. Dep. at 43; McD. Aff. ¶ 17; Cox Aff. ¶ 5.

Cox then asked McDermott to leave the property and told her that if she did not leave, he would have to arrest her.[5] McD. Dep. at 48; Cox Dep. at 59. Cox then called his dispatcher and requested that the dispatcher contact Farley to ask him if he wanted McDermott arrested. Cox Dep. at 59; Cox Aff. ¶ 7 and Ex. 2 thereto; Plaintiff's Opposition ¶¶ 33, 34. The dispatcher reported back to Cox that Farley wanted McDermott to be arrested if she would not leave the property. *Id.* Cox again told McDermott that he would arrest her if she did not leave. Cox Dep. at 59. McDermott refused to leave, and Cox placed her under arrest for criminal trespass.[6] Cox Aff. ¶ 7. Although McDermott fully cooperated with Officer Cox at all times, Cox handcuffed McDermott. McD. Aff. ¶ 23; Cox. Aff. ¶¶ 7–8. When Cox began placing one handcuff on McDermott's wrist, McDermott complained that because she had osteoporosis the handcuff

hurt. Cox Dep. at 59–60; McD. Dep at 50–51; McD. Aff. ¶ 19. Cox then handcuffed McDermott with her hands in front of her body rather than behind her. Cox Dep. at 60; McD. Dep. at 50.

Cox drove McDermott to the Windham Police Department. McD. Dep. at 53. McDermott was booked in the department's booking room. Cox Aff. ¶ 11; McD. Dep. at 56. McDermott was not placed in a cell, but she was "incarcerated in [the] lockup."[7] Cox Aff. ¶ 1; Lewsen Dep. at 29. Windham Police Chief Richard Lewsen was not present when McDermott was arrested. McDermott was given a summons to appear at Maine District Court to answer the charge of criminal trespass and then was allowed to call her husband, Arthur McDermott. Cox Aff. ¶ 11; McD. Dep. at 54. McDermott was released within forty minutes after her arrival at the police station. Cox Aff. ¶ 10 and Ex. 4 thereto. After Arthur McDermott met Patricia McDermott at the police station, he took her to Maine Medical Center because she complained of pain in her right forearm. McD. Aff. ¶ 24; McD. Dep. at 60–61; Arthur McD. Dep. ¶ 9.

Chief Lewsen is responsible for promulgating rules and regulations for the Town of Windham, and Lewsen drafted the Town's police procedures. Lewsen Dep. at 6–7, 9. Shortly after McDermott's arrest,

---

that Noel had at all times given McDermott permission to go on Lot 22.

4. Plaintiff admits that some of the property behind the allegedly improperly posted trees belonged to the O'Connells. McD. Dep. at 43; McD. Aff. ¶ 17.

5. The parties dispute whether, before asking her to leave, Cox asked McDermott for documentation of her ownership, and whether McDermott responded to this request by giv-

ing Cox the surveyor's name and address. McD. Dep at 45; Cox Aff. ¶ 5.

6. *See* 17–A M.R.S.A. § 402.

7. While at the police station, McDermott claims that she could not breathe. McD. Dep. at 57. McDermott has asthma, but she did not inform anyone at the police station that she used an asthma inhaler or was having trouble breathing. McD. Dep. at 57; Cox Aff. ¶ 11. Cox did not notice McDermott having any difficulty breathing. Cox Aff. ¶ 10.

Chief Lewsen "was concerned about the use of force and probable cause for the arrest," and asked another officer to obtain more information regarding the arrest, including photographs of the arrest scene. Lewsen Dep. at 32, 33–35, 41. The criminal complaint was reviewed by Cumberland County Assistant District Attorney Darlene Gerry. Gerry Aff. ¶ 1. ADA Gerry issued a "no complaint" on September 20, 2001, and as of the date of filing of Defendants' motion, McDermott had not been prosecuted by the State on the trespass charge. Gerry Aff. ¶ 2; McD. Dep. at 62–63.

## II. Analysis

Defendants have moved for summary judgment on all of the counts in Plaintiff's Complaint. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A fact is material when its resolution would "affect the outcome of the suit under the governing law," and dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91

L.Ed.2d 202 (1986). The Court reviews the record in the light most favorable to the party opposing summary judgment and indulges all reasonable inferences in that party's favor. *See Sheehy v. Town of Plymouth,* 191 F.3d 15, 18–19 (1st Cir. 1999).

### A. Section 1983 Civil Rights Violations (Counts I and II)

Defendants Cox, Lewsen, and the Town claim entitlement to summary judgment on the civil rights claims in Counts I and II because they argue that Cox did not violate any constitutionally protected right of Plaintiff.[8] A claim under section 1983 requires the plaintiff to show the deprivation of a federally secured right by a person acting under color of state law. *See* 42 U.S.C. § 1983; *see also Camilo–Robles v. Hoyos,* 151 F.3d 1, 5 (1st Cir.1998). Plaintiff alleges that Officer Cox, while acting on his authority based, in part, on policies promulgated by Lewsen and the Town, violated Plaintiff's civil rights by wrongfully arresting her and using excessive force in effectuating the arrest. Defendants Cox and Lewsen have also moved for summary judgment alleging that they are entitled to the defense of qualified immunity. Since a different standard is used to determine liability for the individual and municipal Defendants, the Court will discuss the section 1983 claims against Defendants separately.[9]

**8.** With respect to Count II, Defendants argue that Plaintiff's allegations of violations of her rights under the Maine Constitution cannot support a § 1983 claim because "[b]y the terms of the statute itself, a section 1983 claim must be based upon a *federal* right." *Ahern v. O'Donnell,* 109 F.3d 809, 815 (1st Cir.1997) (emphasis in original). To the extent that Plaintiff's claims in Count II are based on rights under Maine law, she has failed to state actionable claims under section 1983, and to the extent the claims in Count II are based on violations of federal law they are

redundant of Count I. Therefore, the Court will grant Defendants' Motion for Summary Judgment on Count II.

**9.** Plaintiff has also asserted claims against Defendants Cox, Lewsen, and the Town pursuant to 42 U.S.C. § 1985(2) (conspiracy to interfere with civil rights by obstructing justice; intimidating party, witness, or juror), § 1985(3) (conspiracy to interfere with civil rights by depriving persons of rights or privileges), and § 1986 (action for neglect to prevent). The traditional elements necessary to

## 1. Defendant Cox: Qualified Immunity

The Supreme Court has held that government officials performing discretionary functions are generally shielded from civil damages so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The Court " 'must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation.' " *Wilson v. Layne*, 526 U.S. 603, 609, 119 S.Ct. 1692, 1697, 143 L.Ed.2d 818 (1999) (quoting *Conn v. Gabbert*, 526 U.S. 286, 290, 119 S.Ct. 1292, 1295, 143 L.Ed.2d 399 (1999)). If the right was clearly established, "the defendant should reasonably have known of the right." *Rodriguez v. Comas*, 888 F.2d 899, 901 (1st Cir.1989). Second, the Court must "examine the defendant's conduct, to establish whether objectively it was reasonable for him to believe that his actions did not violate a 'clearly established'

right." *Id.* The qualified immunity doctrine "acknowledge[s] that reasonable mistakes can be made as to the legal constraints on particular police conduct. . . . If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense." *Saucier v. Katz*, 533 U.S. 194, 205, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). When a defendant moves for summary judgment on qualified immunity grounds, the Court "must credit the plaintiff's version of defendants' actions to the extent that plaintiff has appropriately supported [her] version." *Sheehy*, 191 F.3d at 22.

### a. Defendant Cox: Unlawful Arrest

Defendants claim that Plaintiff's arrest was proper, and that Defendant Cox is entitled to qualified immunity for the arrest. An arrest is lawful if it was supported by probable cause. *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964) (stating that an arrest is constitutionally valid when at the moment of arrest, the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person in believing that an offense has been committed); *see also*

state a cause of action under Section 1985(3) are: "(1) the defendants must conspire or there must be a conspiracy by defendants; (2) for the purpose of depriving either directly or indirectly any person or class of persons of the equal protection of the laws or of equal privileges and immunities under the laws; (3) the defendants must act in furtherance of the object of the conspiracy, whereby (4) one was injured in his personal property or deprived of having and exercising any right or privileges of a citizen of the United States, [and] . . . (5) there must be some racial or perhaps otherwise class-based invidiously discriminatory animus behind the conspirators' actions." *Rodriguez v. Nazario*, 719 F.Supp. 52, 56 (D.P.R.1989) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971)); *see also Burns v. State Police Ass'n of Massachusetts*, 230 F.3d 8 (1st Cir.2000). Even viewing Plaintiff's allegations in the

light most favorable to her, the Court concludes that there is no evidence of any conspiracy. Plaintiff has also failed to define any definite class which would satisfy section 1985(3)'s requirement or to show that the criteria defining the class are invidious. *Creative Environments, Inc. v. Estabrook*, 680 F.2d 822, 834–835 (1st Cir.1982). Plaintiff has failed even to allege that she belongs to any racial group or class that is entitled to protection or that Defendants possessed any animus towards her on any such basis. Because the Court finds that Plaintiff has failed to demonstrate evidence of any conspiracy between Officer Cox and Chief Lewsen or the Town, the Court will grant summary judgment to Defendants Cox, Lewsen, and the Town on Plaintiff's claims under section 1985(2) and (3). Consequently, Plaintiff's section 1986 claims must also fall. *See Creative Environments*, 680 F.2d at 834–835.

*Sheehy,* 191 F.3d at 19 ("Probable cause to arrest exists where the facts and circumstances within [the police officer's] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent [person] in believing that the [arrestee] had committed or was committing an offense") (internal quotations omitted); *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) ("an arrest ... must stand upon firmer ground than mere suspicion"); *Rivera v. Murphy,* 979 F.2d 259 (1st Cir.1992) (no qualified immunity where officer lacked probable cause to arrest). The threshold inquiry is: relying on the facts alleged in the summary judgment record, taken in the light most favorable to Plaintiff, whether McDermott's arrest was based on probable cause. *Saucier,* 533 U.S. at 201, 121 S.Ct. 2151 ("Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"). Further, the Court of Appeals for the First Circuit has stated: "Where an arrest is challenged as unsupported by probable cause [it] is deemed objectively reasonable unless there *clearly* was no probable cause at the time the arrest was made." *Sheehy,* 191 F.3d at 19 (internal quotations omitted).

The law was clearly established regarding McDermott's right to be free from arrest for criminal trespass absent probable cause when the events of this case took place.[10] The Court must then determine whether a reasonable officer could have

believed that his conduct was lawful "in light of the specific context of the case." *Saucier,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272. The qualified immunity inquiry in this case then is whether a reasonable police officer with the information known to him could reasonably have believed that he had probable cause to arrest McDermott for criminal trespass. *See Fletcher v. Town of Clinton,* 196 F.3d 41, 53 (1st Cir.1999).

Cox drove to the scene in order to respond to a report from a neighbor that a car was blocking the road, but when he arrived he found no such circumstance. Instead, Officer Cox confronted McDermott on property adjacent to Overlook Road that she stated she owned, and over which she claimed there was a disputed boundary with the neighbors. McDermott further told Cox that she was looking for surveyor marks; and she pointed out, and Cox observed, some markers in the woods. Cox pointed out the "No Trespassing" signs to McDermott.[11] McDermott again asserted her right to be on Lot 22, and told Cox that one of the "No Trespassing" signs was posted on a tree on the property in which she claimed an interest.

Although Cox observed numerous "No Trespassing" signs in the vicinity of the land where McDermott had been walking, there is no evidence that Plaintiff did not have a legal right to be there. Officer Cox in turn did not investigate the claim of trespass either substantiate or contradict McDermott's claim that *she was on her*

---

**10.** Under Maine law, a person commits a criminal trespass if, "knowing that that person is not licensed or privileged to do so, ... [she e]nters any place from which that person may lawfully be excluded and that is posted in accordance with subsection 4 or in a manner reasonably likely to come to the attention of intruders ... or ... [r]emains in any place in defiance of a lawful order to leave that was personally communicated to that person by

the owner or another authorized person." 17–A M.R.S.A. § 402(1)(C) and (D) (Supp. 2000); *see also State v. Dyer,* 769 A.2d 873, 876 (Me.2001).

**11.** Cox testified at deposition that the "No Trespassing" signs appeared to him to be in compliance with Maine law. Cox Aff. ¶ 5; Cox Dep. at 63.

*own land,* or that *some of her land was improperly posted.* Cox Dep. at 53. The parties dispute whether Cox talked directly with Farley,[12] but in either case Farley never showed Cox where his property line lie on the ground to support his claim that McDermott was trespassing.[13] Although it may have been reasonable for Cox to conclude that Farley had the right to exclude McDermott from *his* property, the "No Trespassing" sign which contained the name "Farley" was across the street from the woods where McDermott had been walking. Cox found McDermott on the side of the road where "No Trespassing" signs were posted, bearing the name "O'Connell," rather than "Farley." There is no indication that any of those signs related to Lot 22. Moreover, the area of Lot 22 where McDermott was standing did not appear to be posted with any signs. McD. Dep. at 21, 35; Cox Aff. ¶ 3. McDermott continued to claim ownership and a right to be on the property. When McDermott refused to leave, Cox asked the dispatcher to call Farley to inquire whether he wanted to have Plaintiff arrested. When the dispatcher reported back that Farley did, there is no indication that Cox was acting under authorization from a

12. Defendants assert, in their Statement of Material Facts, that Cox spoke to Farley and that Farley told Cox that McDermott was trespassing *before* Cox ever approached McDermott. Plaintiff disputes this, and she contends: "Prior to arresting me and placing me in handcuffs, Officer Cox never went to personally speak with James Farley. He never requested that I leave and return with documentation about my ownership of Lot 22. I saw Officer Cox from the time that he arrived until I left with him to go to the Police Station." McD. Aff. ¶ 18. The Court finds that, in any event, Cox did not speak to Farley *after* confronting McDermott.

The citations to the record, to which Defendants point, do little to support Defendants' contentions, and leave the material issues of fact unresolved, including whether: (1) Cox had a conversation with Farley on that day, (2) Cox and Farley ever discussed specifically who owned the property, and (3) Cox knew where any property boundary lines were. Even if a conversation did occur, there is absolutely no evidence that Farley showed Cox any property boundary lines or conveyed to Cox where they were. Cox testified at deposition that Farley "mentioned that several days earlier, Mrs. McDermott had been blocking the road [with her car]." Cox Dep. at 42. Cox further testified that Farley "didn't come down there with me" to the area where McDermott was. Cox Dep. at 48. Cox stated: "When I originally pulled down there, I thought it was all Farley's property. ... I knew [Farley] didn't [own any property] ... I thought his parents owned all that down there." Cox Dep. at 50–51. When asked whether Farley had indicated to Cox specifically where his property boundaries were, Cox testified: "We didn't get specific." Cox Dep. at 49. Cox said, "[Farley] had told me prior that she was walking all through the woods. I don't know where. ... I don't know specifically where, but *he* did see her walking in the woods." Cox Dep. at 48–49 (emphasis added). Nevertheless, Cox testified that when ·he arrested McDermott, he was "just going based on what [Farley] told me ... that [it] was his property ... [and] I didn't [know Farley was right], but I didn't know he was wrong either." Cox Dep. at 57–58. The Court concludes that there is a material dispute about whether Cox went to talk to Farley, and what, if anything, Cox knew about the property ownership on Overlook Road in relation to where McDermott was standing or walking. The record demonstrates that Cox apparently assumed or concluded that all of the property belonged to Farley's family, and Cox apparently never asked Farley if he had any claim of title to the property McDermott was on. Because Cox did not inquire into the statutory criteria of criminal trespass, this was not a reasonable conclusion. Cox made no reasonable effort to determine whether the property McDermott was on was connected to Farley.

13. Indeed the undisputed record in this case does not establish that McDermott was arrested for trespass on Farley's rather than someone else's property. McDermott claims that "[t]he property lines of Lot 22 do not abut the Farley property lines at any point." McD. Aff. ¶ 10.

rightful property owner to convey a lawful order for Plaintiff to leave the premises. The evidence shows that Cox apparently concluded, based only on Farley's initial complaint about the car and Cox's own observation of "No Trespassing" signs, that Plaintiff did not have any right to be present on the subject property. The Court concludes that, on these facts, Cox had no probable cause to justify Plaintiff's arrest. The Court further finds that no reasonable officer could have concluded that arrest of McDermott was proper in the circumstances.

Although an officer is not required to follow every lead to determine that a suspect may be innocent before making a probable cause determination, an officer must have more than reasonable suspicion of criminal activity. *See, e.g. Borlawsky v. Town of Windham,* 115 F.Supp.2d 27, 29–30 (D.Me.2000) (citing *United States v. Bonilla Romero,* 836 F.2d 39, 46 (1st Cir. 1987) (noting that probable cause does not require police officers to investigate every possibility of innocence and doing so burdens public safety); *Kelley v. Myler,* 149 F.3d 641, 646–47 (7th Cir.1998) (holding that once probable cause is established,

officer is not required to investigate further); *Ricciuti v. N.Y.C. Transit Authority,* 124 F.3d 123, 128 (2d Cir.1997) (holding that police officer is not required to explore and eliminate all theoretically plausible claims of innocence)). Although officers are permitted to make mistakes, they must have a reasonable basis upon which to deprive a person of her liberty. The Court finds that a reasonable officer, faced with the information available to Cox, would have done further investigation before arresting Plaintiff. The Court concludes that genuine issues of material fact remain regarding additional information that Officer Cox may have had at the time he made the arrest, which could affect the determination of whether Cox is entitled to qualified immunity. Thus, the Court will deny Defendant Cox's claim for qualified immunity, and deny summary judgment to Cox on Plaintiff's section 1983 claim for unlawful arrest in Count I.

**b. Defendant Cox: Excessive Force**

■ Plaintiff claims that Cox injured her during the course of placing handcuffs on her.[14] The right under the Fourth

---

14. Plaintiff also appears to be making the argument that under the circumstances she had a right not to be handcuffed. Although the Court has found no cases from the Court of Appeals for the First Circuit addressing claims based on an asserted right not to be handcuffed, the Court concludes that, in this case, the policy of granting officers the discretion to handcuff, while encouraging their routine use in the normal course of an arrest, is reasonable. *See, e.g., Soares v. State of Conn.,* 8 F.3d 917, 922 (2d Cir.1993) (granting summary judgment to an officer based on qualified immunity where, "the right in question [was] the right not to be handcuffed in the situation presented to the arresting officers," and plaintiff failed to establish any "clearly established" right not to be handcuffed); *Atwater v. City of Lago Vista,* 532 U.S. 318, 354, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001) (where officer has probable cause to believe individual has committed "even a very minor

criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender," which may include use of handcuffs); *Walton v. City of Southfield,* 995 F.2d 1331, 1342 (6th Cir.1993) (plaintiff alleging a claim of excessive force based on the use of handcuffs must allege "that the departmental policy [prohibiting the use of handcuffs in certain circumstances] was sufficiently mandatory so as to give rise to a legitimate claim of entitlement not to be handcuffed"); *but see Howard v. Dickerson,* 34 F.3d 978, 980 (10th Cir.1994) (clearly established constitutional right to protection against deliberate indifference to a prisoner or pretrial detainee's serious medical needs). Nonetheless, the Court finds that Plaintiff has failed to establish, on the facts of this case, that the proper use of handcuffs by an officer effectuating an arrest for criminal trespass does, *per se,* employ excessive force.

Amendment to be free from excessive force by the state is clearly established. *See, e.g., Rodriguez,* 888 F.2d at 901; *Holt v. Artis,* 843 F.2d 242, 246 (6th Cir.1988); *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); *Saucier,* 533 U.S. at 201–202, 121 S.Ct. 2151 (holding that *Graham v. Connor* "clearly establishes the general proposition that the use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness"). Beyond the general principle, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier,* 533 U.S. at 201–202, 121 S.Ct. 2151 (quoting *Anderson,* 483 U.S. at 640, 107 S.Ct. 3034).

■ The Court analyzes excessive force claims under the Fourth Amendment's "objectively reasonable" test. *Graham,* 490 U.S. at 394–95, 109 S.Ct. at 1871. The issue in this case is whether the manner in which Cox handcuffed Plaintiff was objectively reasonable or constituted an excessive use of force. The " 'reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene,' paying careful attention to the facts of the specific case at hand, the severity of the crime, the threat of danger to the officer and society, and 'whether

[the suspect] is actively resisting arrest or attempting to evade arrest by flight.' " *Barber v. Guay,* 910 F.Supp. 790, (D.Me. 1995) (citing *Graham,* 490 U.S. at 396, 109 S.Ct. at 1872). Plaintiff alleges that Cox used excessive force when he put handcuffs on her, which caused injury due, in part, to her osteoporosis. Plaintiff does not contend, however, that Cox used more than ordinary force to secure the handcuffs on her.

An officer is entitled to use force to secure an arrestee before taking her into custody. The legal test regarding the use of force is whether the force used by Defendant Cox was "consistent with the amount of force that a reasonable police officer would think necessary to bring the arrestee into custody." *Gaudreault v. Municipality of Salem, Mass.,* 923 F.2d 203, 205 (1st Cir.1990) *cert. denied,* 500 U.S. 956, 111 S.Ct. 2266, 114 L.Ed.2d 718 (1991). Although Plaintiff cooperated with Cox, she declined his repeated requests to leave the property, and a reasonable officer in Cox's position could have believed it appropriate and necessary to handcuff her in the course of her arrest. There is no evidence that Cox used much force at all or that he attempted more than once to handcuff Plaintiff with her hands behind her back.[15] The undisputed facts demonstrate that Cox handcuffed Plaintiff with

Plaintiff also appears to be arguing that the Town's lack of a handcuffing policy contributed to Cox's exertion of excessive force in applying the handcuffs. Her claim is erroneous because, on this record, the Court finds that the Town had a discretionary policy authorizing the use of handcuffs. Moreover, the decision of whether to place a suspect in handcuffs is precisely the discretionary function contemplated by the qualified immunity doctrine.

**15.** Defendants contend that Cox's motivation for handcuffing Plaintiff with her hands in front of her body, rather than behind her, was

for her comfort after he learned of her condition. Plaintiff disputes this contention, and she responds that Cox tried to handcuff her from behind, that this hurt her, and that Cox only decided to handcuff her with her arms in front of her body when her medical condition physically prevented her arms from going behind her. The Court finds that the dispute over Cox's motivation is immaterial because the excessive force qualified immunity inquiry concerns the objective reasonableness of the officer's conduct. Plaintiff does not allege, for instance, that Officer Cox attempted to handcuff her behind her back *after* being told that she had osteoporosis.

her arms in front of her body, after she told him that she had osteoporosis. A police officer effectuating an arrest is entitled to secure the arrestee, by means which include, *inter alia*, the use of handcuffs. *See, e.g., McPherson v. Auger*, 842 F.Supp. 25, 30 (D.Me.1994) (granting summary judgment to Town on "Plaintiff's claim that the Town's policy of handcuffing all arrestees, regardless of the threat that they pose, constitutes an unreasonable seizure in violation of the Fourth Amendment") (quoting *Graham v. Connor*, 490 U.S. at 396, 109 S.Ct. 1865) (Plaintiff demonstrated no evidence "that the Town's uniform handcuffing policy reflects an excessive use of force, given that the 'right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.' ").

The District Court for the District of Massachusetts recently denied a plaintiff's 1983 claim for injury based on her alleged improper handcuffing: "Plaintiffs here describe a routine handcuffing which caused pain and discomfort but no more lasting injury to [plaintiff's] shoulder. Such an event does not rise to the level of a constitutional violation on the 'objective reasonable' standard described in *Graham v. Connor*." *Brady v. Dill*, 24 F.Supp.2d 129, 133 (D.Mass.1998). Like *Brady*, the fact that Cox continued to place McDermott in handcuffs despite her telling him that she suffered from osteoporosis, without more, does not rise to anywhere near the level of excessive force. In fact, Cox altered his normal procedures to the extent that he handcuffed McDermott in front of rather

than behind her body.[16] Further, Plaintiff has failed even to allege that she sustained any real or lasting injury as a result of her handcuffing; she only claims that "it hurt" when Cox put handcuffs on her.[17] Although McDermott visited a doctor for pain in her arm after her release from custody, she has failed to produce medical records to support the contention that she was injured during the course of her arrest. Thus, the Court concludes that Plaintiff has demonstrated insufficient evidence that the amount of force Officer Cox exerted in the course of handcuffing Plaintiff was objectively unreasonable or excessive. The Court will, therefore, grant Defendant Cox qualified immunity on that part of Count I, which alleges excessive force.

### 2. Defendant Lewsen: Qualified Immunity

Defendant Lewsen also claims qualified immunity from Plaintiff's section 1983 claims, and he contends that he cannot be liable for Cox's actions in the course of arresting and handcuffing Plaintiff because "there is no subordinate liability" under section 1983. Although supervisors cannot be held liable under section 1983 solely on a *respondeat superior* theory, liability may be based on the supervisor's own acts or omissions. *See Seekamp v. Michaud*, 109 F.3d 802, 808 (1st Cir.1997); *Monell v. Dept. of Social Services*, 436 U.S. 658, 694–95 n. 58, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A supervisor "may be liable under section 1983 if he formulates a policy or engages in a practice that leads to a civil rights violation committed by another." *Camilo–Robles v. Hoyos*, 151 F.3d 1, 6–7

---

**16.** Cox testified at deposition that he was not aware of any specific Windham policy—written or unwritten—regarding the use of handcuffs. Cox Dep. at 27–28; Cox Dep. at 60. Cox testified that he believes police officers handcuff suspects for their own protection,

and that "his own personal policy" is to always handcuff arrestees. Cox Dep. at 30, 60.

**17.** McDermott had never been handcuffed before, and she did not have any particular understanding of the proper use of handcuffs. McD. Dep. at 50–52.

(1st Cir.1998); *City of Canton v. Harris,* 489 U.S. 378, 388–89, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). If liability of a supervisor is based on unwritten or informal policies, it must "result from a deliberate choice to follow a course of action." *Britton v. Maloney,* 901 F.Supp. 444, 449 (D.Mass.1995) (citing *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)). Supervisory liability may also arise "if there exists a known history of widespread abuse sufficient to alert a supervisor to ongoing violations." *Maldonado–Denis v. Castillo–Rodriguez,* 23 F.3d 576, 582 (1st Cir.1994). Because Chief Lewsen was responsible for promulgating policies for the Windham Police Department, his own actions in that regard are at issue in this litigation. Before analyzing the merits of Plaintiff's claims against Lewsen, however, the Court must discuss Lewsen's claim of qualified immunity.

### a. Defendant Lewsen: Unlawful Arrest

█ Plaintiff claims that her wrongful arrest by Cox was based on Lewsen's failure to train police officers on the investigation of criminal trespass complaints and the elements constituting that crime. Defendant Lewsen contends that he is entitled to qualified immunity on Plaintiff's claim of his supervisory liability for failure to train. *See, e.g., Febus–Rodriguez v. Betancourt–Lebron,* 14 F.3d 87, 92 (1st Cir.1994) (plaintiff must show that the failure to train: (1) amounted to deliberate indifference to the constitutional rights of the plaintiff, and (2) was affirmatively linked to the violation of plaintiff's rights); *see also, Brady v. Dill,* 24 F.Supp.2d 129 (D.Mass.1998) (finding insufficient evidence that chief policy making official could be held liable under section 1983 for wrongful detention of arrestee) *reversed on other grounds, Brady v. Dill,* 187 F.3d

104 (1st Cir.1999). Under qualified immunity, "Public officials who stand accused of civil rights violations under section 1983 nonetheless can avoid liability... by showing either that they did not violate a right clearly established under federal law or that they acted with objective legal reasonableness." *Camilo–Robles v. Hoyos,* 151 F.3d 1, 5–6 (1st Cir.1998).

> [A] supervisor's liability arises if ... a failure to properly supervise and train the offending employee caused a deprivation of constitutional rights. The plaintiff must demonstrate that the supervisor was deliberately indifferent to or tacitly authorized the offending acts. This requires a showing that the supervisor had notice that the training procedures and supervision were inadequate and likely to result in a constitutional violation.

*Tlamka v. Serrell,* 244 F.3d 628, 635 (8th Cir.2001) (granting qualified immunity on supervisory liability theory for on failure to train correctional officers despite finding that subordinate officers committed underlying constitutional deprivation) (internal citations omitted). Plaintiff had a clearly established right to be free from unlawful arrest, therefore, the focus of the immunity inquiry becomes whether the supervisor's actions were reasonable.

Qualified immunity protects "supervisory officials from suit when they could not reasonably anticipate liability." *Camilo–Robles,* 151 F.3d at 6. "When a supervisor seeks qualified immunity in a section 1983 action... there must be a bifurcated 'clearly established' inquiry—one branch probing the underlying violation, and the other probing the supervisor's potential liability." *Id.* Once the underlying constitutional deprivation is established, "[t]he question, then, reduces to the test of objective legal reasonableness." *Id.* In this case, Plaintiff alleges that Windham police

officers were inadequately trained to respond to criminal complaints of trespass, but the record is void of any facts which would have alerted Lewsen that the officers were inadequately trained. Although the Town of Windham offers no specific training and has no written policy regarding the investigation of criminal trespass complaints, *see* Lewsen Dep. at 26, Officer Cox received mandatory training while at the Maine Criminal Justice Academy, which included instruction on elements of claims. Cox Aff. ¶ 5. Additionally, the Windham Police Department provides its officers with training in criminal law and updates on a regular basis. Lewsen Dep. at 26; Cox Aff. ¶ 8. Cox testified that he had recently received training regarding criminal trespass involving a change in the law concerning snowmobiles. Cox Dep. at 23–24. Based on the record, no reasonable fact finder could conclude that Lewsen's decisions about the training regarding criminal law provided to Windham police officers was unreasonable or that Lewsen violated Plaintiff's constitutional rights by failing to properly train police officers.[18]

Plaintiff has similarly failed to show that Lewsen made a deliberate choice to foster or tolerate an environment in which police officers are permitted to commit ongoing violations. The evidence that, in 1989, Officer Cox was a defendant in an action, either for false arrest or excessive force, in which a judgment was entered for the plaintiff, *see* Cox Dep. at 14–16, falls far short of establishing either that a history of widespread abuse existed in the department or that Lewsen was aware of any

such problem and made a deliberate choice to foster or tolerate it. The Court finds that Defendant Lewsen is entitled to qualified immunity, and the Court will, therefore, grant Lewsen summary judgment on Plaintiff's claim for unlawful arrest in Count I.

### b. Defendant Lewsen: Excessive Force

■ Plaintiff contends that Cox used excessive force in handcuffing her, and that Lewsen is liable for his failure to implement a more precise handcuffing policy. The undisputed evidence demonstrates that Chief Lewsen promulgated policies under which Windham police officers had discretion, but were encouraged, to handcuff every person they arrested. Lewsen Dep. at 14, 18. Although the Town has no written policy regarding precisely when the use of handcuffs is authorized, Lewsen testified at deposition that the Town's procedures include a "continuum of force," and that the use of handcuffs is authorized when an officer is facing passive resistance. Lewsen Dep. at 14, 17–19, 26–27. Lewsen further testified that he encouraged officers to handcuff *each person* who is placed under arrest.[19] Lewsen Dep. at 18. Cox testified that he understood that the purpose of handcuffing was for the safety of the suspect, the officers, and others. Cox further testified that his own policy was to handcuff every suspect whom he arrested. Cox Dep. at 30, 60. The Court finds sufficient evidence in the summary judgment record to demonstrate that Chief Lewsen established a policy or cus-

---

**18.** Even assuming *arguendo,* for summary judgment purposes, that Cox did commit a constitutional violation by arresting Plaintiff under circumstances where no reasonable officer could have believed that he had probable cause to do so, Plaintiff has failed to establish any link or causal relationship between Cox's actions in making the arrest and policies pro-

moted or deliberately omitted by Chief Lewsen.

**19.** Although at least one officer of the Windham Police Department does not handcuff suspects each time he makes an arrest, Cox Dep. at 29, the Court finds that this is a Windham police "custom."

tom of encouraging officers to handcuff all suspects in the course of arresting them. Nevertheless, Plaintiff has not established that this policy is violative of any clearly established federal right. Plaintiff has not shown that she had a clearly established right *not to be handcuffed* incident to her arrest.

Plaintiff argues that the police department's lack of written policy regarding handcuffs coupled with her physical inability to place her right arm behind her when Cox attempted to handcuff her sufficiently demonstrate evidence from which a jury could conclude that the policy of handcuffing all arrestees constituted a policy condoning excessive force. The undisputed evidence in the summary judgment record demonstrates that the Windham Police Department had a written policy regarding a discretionary continuum of force, which authorized the use of force in the face of passive resistance, as well as an unwritten custom of encouraging police officers to handcuff every suspect whom they take into custody. Officer Cox testified that he received mandatory training on the proper placement and adjustment of handcuffs upon a suspect while at the Maine Criminal Justice Academy. Cox Aff. ¶ 5. The Court finds that Officer Cox's actions were, in fact, based on discretionary policies promoted by Lewsen. Further, Lewsen's decision to promulgate the discretionary policy was not unreasonable. The fact that the police department had no specific written policy dictating precisely when the use of handcuffs is justified does not amount to a deliberate choice to follow a course of action likely to lead to a constitutional violation or to deliberate indifference on Lewsen's part. To the contrary, Lewsen and the Town provided guidance to officers in effectuating arrests, including with regard to the use of force. Accordingly, the Court will grant summary judgment on the basis of qualified immunity to

Defendant Lewsen on Plaintiff's claim of excessive force.

### 3. The Town of Windham

The Town of Windham argues that it is entitled to summary judgment on Count I of the Complaint because Plaintiff has failed to demonstrate sufficient evidence of any custom, policy, or practice by the Town which violated Plaintiff's rights. In order to succeed under section 1983 on a theory of municipal liability, the plaintiff must show: (1) a municipal custom or policy, and (2) that the custom or policy was "the cause of and the moving force behind the deprivation of constitutional rights." *Bordanaro v. McLeod*, 871 F.2d 1151, 1156 (1st Cir.), *cert. denied, City of Everett, Mass. v. Bordanaro*, 493 U.S. 820, 110 S.Ct. 75, 107 L.Ed.2d 42 (1989) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 819, 105 S.Ct. 2427, 2434, 85 L.Ed.2d 791 (1985)). After determining that a material question of fact exists regarding whether a constitutional violation has occurred, "the court must go on to consider whether allegations of a municipal policy or practice have been made that are sufficient to survive summary judgment." *Fletcher*, 196 F.3d at 56. A municipality can be held liable, for example, "if its police chief is a policymaker and acquiesces in a police custom or policy as to which he has actual or constructive knowledge." *Kinan v. City of Brockton*, 876 F.2d 1029, 1035 (1st Cir. 1989).

A municipality's position in a § 1983 suit differs from that of the individual defendants in two key ways.... First, the municipality enjoys no immunity from damages liability under § 1983. [citation omitted] This means that it is not impossible for a municipality to be held liable for the actions of lower-level officers who are themselves entitled to qualified immunity. Second, a municipality cannot be held liable under a respondeat

superior theory. [citation omitted] ... Something more than liability on the part of the individual defendants must be shown to impose liability on the municipality. A plaintiff seeking damages against the municipality must show that the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the municipality's] officers or is pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels. [citation omitted] If the allegation against the municipality involves a failure to train, the plaintiff must put forth evidence of a failure to train that amounts to deliberate indifference to the rights of persons with whom the police come into contact. Finally, plaintiffs must show a direct causal link between the municipal action and the deprivation of federal rights. *Fletcher v. Town of Clinton*, 196 F.3d 41, 55 (1st Cir.1999) (citing cases).

### a. Defendant Town: Unlawful Arrest

■ Plaintiff contends that "Windham police officers are not trained in the investigation of criminal trespass claims." Plaintiff's Opposition at 11 (Docket No. 6). Where an allegation against a municipality "involves a failure to train, the plaintiff must put forth evidence of a failure to train that amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Fletcher*, 196 F.3d at 55. "To demonstrate deliberate indifference a plaintiff must show (1) a grave risk of harm, (2) the defendant's actual or constructive knowledge of that risk, and (3) his failure to take easily available measures to address the risk." *Camilo-Robles*, 151 F.3d at 7. The evidence demonstrates that the Town provided training to the officers, generally, on the elements of claims and changes in the criminal law. The Town had also recently provided officers, including Cox, with specific training regarding a change in the criminal trespass law regarding snowmobiles. The Court concludes that Plaintiff has not established a failure to train or the requisite deliberate indifference to any lack of training or risk of constitutional violation. The Court will, therefore, grant summary judgment to Defendant Town on Plaintiff's claim of unlawful arrest in Count I.

### b. Defendant Town: Excessive Force

■ Plaintiff argues that "no [Town] policy exists with respect to the use of handcuffs." Plaintiff's Opposition at 11. As previously discussed, Plaintiff is mistaken that the Town lacked such a policy. Moreover, Plaintiff has failed to demonstrate deliberate indifference on the part of the Town, or of Lewsen on behalf of the Town, which is necessary to establish liability for any constitutional violation committed by a police officer employed by the municipality. Evidence in the record demonstrates that the Town, through Chief Lewsen, promulgated written and unwritten policies regarding the use of force, which addressed, by example, the use of handcuffs. Moreover, the manner by which Cox effectuated placing Plaintiff in handcuffs and under arrest did not include any unreasonable or excessive force, and Plaintiff has not shown that she sustained any injury from her handcuffing. The Windham police department's custom, encouraged by Chief Lewsen, to handcuff suspects in the ordinary course of an arrest is not such as to condone constitutional violations. The Court will grant summary judgment to the Town on Plaintiff's claim of excessive force in Count I in Plaintiff's Complaint.

## B. State Law Tort Claims

Plaintiff has claimed that Defendants Cox and Town are jointly and severally liable for various torts allegedly committed against her by Cox. Apart from raising the Maine Tort Claims Act as an affirmative defense in their Answer, Defendants have failed to make any arguments regarding the potential applicability of immunity from liability under the Act.[20] Because the parties have failed to adequately brief the issue, the Court will deem it waived for purposes of summary judgment.

### 1. Defendants Cox and Town: False Arrest or Imprisonment (Counts III and IV)

■ Defendants contend that there was no false arrest or imprisonment because Plaintiff's detention was brief, Plaintiff's arrest was based on probable cause, and Cox's use of handcuffs was justified. False imprisonment or false arrest "involves the unlawful detention or restraint of an individual against [her] will." *Nadeau v. State*, 395 A.2d 107, 116 (Me.1978). "[M]ore than one officer and more than one department may be exposed to liability for an unlawful arrest and subsequent confinement." *Qualey v. Town of Wilton*, 540 A.2d 479 (Me.1988) (citations omitted) (material question of fact as to municipal police department's participation in alleged unlawful arrest precluded summary judgment for municipality and arrest by state trooper "would not, *ipso facto,* relieve the Town of any possible liability"). The Court has herein previously determined that questions of material fact remain disputed regarding whether a reasonable officer in Defendant Cox's position could have believed that he had probable cause to arrest and imprison Plaintiff, including, *inter alia,* whether Cox spoke directly to Farley before making the arrest in order to determine whether McDermott was present on property where she had no lawful right to be. Accordingly, because the same nucleus of disputed facts are at issue in Plaintiff's claims for false arrest and imprisonment as in her section 1983 claims for unlawful arrest, the Court will deny summary judgment to Defendant Cox on Plaintiff's claims for false imprisonment and false arrest. Because Defendant Town has failed to move for summary judgment on Count III or to demonstrate that it is immune under the MTCA for Counts III or IV, the Court will not grant summary judgment to Defendant Town on these counts.

### 2. Negligent (Count V) and Intentional (Count VII) Infliction of Emotional Distress

■ Cox and the Town argue that they are entitled to summary judgment on Plaintiff's claims of the infliction of emotional distress because there was no underlying tort, no special relationship between Plaintiff and the Defendants, and no evidence of any "severe emotional distress." The tort theories of intentional and negligent infliction of emotional distress both "require proof of severe emotional distress." *Holland v. Sebunya*, 759 A.2d 205, 212 (Me.2000). "Serious emotional distress exists where a reasonable person normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the event." *Id.* (citing *Town of Stonington v. Galilean Gospel Temple*, 722 A.2d 1269, 1272). McDermott told her husband that, at the police station, she was afraid that the police were going to put her in a "cage." McD. Dep. at 23; Arthur McD.

---

20. Defendants have not argued that they are entitled to immunity pursuant to the Maine Tort Claims Act (MTCA), 14 M.R.S.A. §§ 8101–8118 (1980). *See further discussion, infra,* C. Damages.

Dep. at 9. Plaintiff claims that she "was extremely upset by this incident. I think about it constantly. I fear being arrested again. I cannot get it out of my mind. I do not sleep well anymore because of this incident." McD. Aff. ¶¶ 25–26; McD. Dep. at 23. Plaintiff alleges that, at the police station, she "had great difficulty breathing." McD. Dep. at 57. Defendants point out that McDermott has not seen any mental health care practitioner or doctor regarding her claimed emotional distress or for her occasional sleeplessness, and she did not seek treatment for her breathing difficulty. McD. Dep. at 61–62, 64; McD. Dep. at 58. The Court cannot determine on the record before it, based only on Plaintiff's unsupported allegations, that the emotional distress she experienced was serious.

Additionally, a plaintiff must show that "the harm alleged reasonably could have been expected to befall the ordinarily sensitive person." *Holland*, 759 A.2d at 212. (citing *Theriault v. Swan*, 558 A.2d 369, 372 (Me.1989)). The Court finds that, although most people would experience distress at being wrongfully arrested, handcuffed and taken to the police station for booking, Plaintiff has failed to demonstrate that the "ordinarily sensitive person" would "be unable to adequately cope with the mental stress engendered" by that action. *Id.* Defendants contend that Plaintiff has never sought treatment for any of these alleged ailments. Even construing the facts in the light most favorable to Plaintiff, the Court finds that she has not produced sufficient evidence to demonstrate that severe emotional distress could be expected to befall the ordinarily sensitive person who is temporarily detained and wrongfully arrested.

### a. Negligent Infliction of Emotional Distress

Further, "the tort of negligent infliction of emotional distress requires either a unique relationship between the plaintiff and the defendant, or an underlying tort." *See Bryan R. v. Watchtower Bible & Tract Soc'y*, 738 A.2d 839, 848, *cert. denied*, 528 U.S. 1189, 120 S.Ct. 1242, 146 L.Ed.2d 101 (2000). In this case there is no suggestion of a unique relationship between McDermott and Cox. In a recent case discussing NIED, the Maine Law Court stated that although an assault and battery claim "can be viewed as an underlying tort, if Plaintiff prevails on that claim and proves that she suffered emotional distress, she is entitled to an award of damages for the emotional distress. Thus, any claim she may have made for the negligent infliction of emotional distress is subsumed in her excessive force [or assault and battery] claim." *Richards v. Town of Eliot*, 780 A.2d 281, 293 (Me.2001). The Court will, therefore, grant Defendants summary judgment on Count V.

### b. Intentional Infliction of Emotional Distress

■ To withstand summary judgment on a claim for intentional infliction of emotional distress, McDermott must:

present facts tending to show that the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from its conduct; that "the conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, utterly intolerable in a civilized community"; that the actions of the defendant caused the plaintiff's emotional distress; and that the emotional distress suffered by the plaintiff was "so severe that no reasonable [person] could be expected to endure it."

*Champagne v. Mid–Maine Medical Center*, 711 A.2d 842, 847 (Me.1998) (citations omitted). Although the facts in the sum-

mary judgment record permit an inference that Cox exhibited some favoritism towards Farley, whom he apparently knew, which may have affected Cox's decision to arrest McDermott without conducting further investigation, Plaintiff has failed to meet the burden of establishing that the distress she experienced was severe or that Cox's conduct was outrageous or intentional. She has provided no documentation of her emotional distress or any physical symptoms resulting therefrom. Accordingly, the Court will grant Defendants summary judgment on Count VII.

### 3. Assault and Battery (Count VI)

■ Defendants Cox and the Town claim entitlement to judgment on Count VI because they assert that Cox did not assault or batter Plaintiff and that the amount of force he used was reasonable under the circumstances. "A person is guilty of assault if he intentionally, knowingly, or recklessly causes bodily injury or offensive physical contact to another." 17–A M.R.S.A. § 207. A battery may be committed by a mere touching of another. JACK H. SIMMONS ET AL., MAINE TORT LAW § 1.01 (2001). McDermott's claim that she was "assaulted" by Cox is based upon his use of handcuffs. McD. Dep. at 55. Plaintiff has alleged that she had difficulty breathing and that she suffered pain in her right forearm as a result of Cox's placing her in handcuffs. Although the evidence also shows that Cox did not make any threats against McDermott, nor did he push, shove, hit, yell, or raise his voice at McDermott, Cox touched McDermott as he arrested and handcuffed her. McD. Dep. at 51.

The Maine Law Court has stated that the tort of assault and battery has come to be called excessive force when it is alleged against a police officer. *See Richards,* 780 A.2d at 290. In *Richards,* the Maine Law Court held that even where a person re-

ceives very minor injuries resulting from police action, a claim for excessive force may withstand summary judgment. *See Richards,* 780 A.2d at 290 ("Although [Plaintiff] suffered relatively minor bodily injuries as a result of the officers' actions, the extent of the injuries is not the only indication of excessive force.") In evaluating such a claim, the Court should consider "the nonviolent nature of the offense, [Plaintiff's] lack of physical resistance to the arrest, and the scarcity of circumstances suggesting a safety threat to the officers, [in order to determine whether] a jury could reasonably find that the force allegedly used by the officers was unreasonable." *Id.* It is undisputed that Plaintiff did not resist and cooperated fully with Officer Cox. Cox testified at deposition that he felt neither unsafe nor threatened at the time he arrested and handcuffed McDermott. Cox Dep. at 60. There is no evidence that there was any threat of violence associated with McDermott's presence on Overlook Road, and the Court notes the "nonviolent nature of the offense" of criminal trespass in the given circumstances.

Although "[t]he analysis of the state law claim[ ] of . . . excessive force is the same as for the federal law claims," *Richards,* 780 A.2d at 290, the Court's grant of summary judgment to Defendants Cox, Lewsen, and Town on Plaintiff's section 1983 claim of excessive force is not dispositive here. The determination of the section 1983 claim was made on the basis of qualified immunity, and Defendants have failed to plead immunity to this state law claim. Because material disputes remain regarding whether Cox had probable cause for Plaintiff's arrest, the Court will deny summary judgment to Defendants Cox and the Town on Count VI.

### 4. Malicious Prosecution (Count VIII)

■ Defendants claim entitlement to judgment on Plaintiff's claim for malicious

prosecution asserting that Plaintiff was arrested on probable cause, there was no malice, and the trespass complaint was never prosecuted. In order for Plaintiff to prevail on her claim for malicious prosecution, she must show that "the criminal trespass complaint brought against [her] by [Defendants] was (1) instituted [or continued] against [her] without probable cause, (2) with malice, and (3) that [she] received a favorable termination of the proceedings." *Sebunya,* 759 A.2d at 212–13. The Maine Law Court has determined that express "[m]alice exists where the defendant's tortious conduct is motivated by ill will toward the plaintiff" or where "deliberate conduct by the defendant ... is so outrageous that malice toward a person injured as a result of that conduct can be implied." *Tuttle v. Raymond,* 494 A.2d 1353, 1361 (Me.1985) (internal citations omitted). A defendant's "mere reckless disregard of the circumstances" is not a sufficient showing from which malice can be implied. *Id.* Although, on this record, McDermott's arrest was not supported by probable cause, Plaintiff has demonstrated no evidence that Cox, Lewsen, or any other person or entity acted with ill will towards her. Nor is there any basis to imply malice from Cox's behavior. Because Plaintiff has failed to support the allegations of malice, the Court will grant summary judgment to Defendants on Count VIII.

### III. Damages

Defendants argue that Plaintiff's claim for punitive damages should be dismissed because: (1) punitive damages are not allowed against the Town under the Maine Tort Claims Act;[21] (2) Plaintiff has not proved that Cox or Lewsen were motivated by evil motive or intent or that their conduct involved reckless or callous indifference to Plaintiff's federally protected rights under section 1983; and (3) Plaintiff has not proved by clear and convincing evidence that Defendants acted with malice in the commission of any state law tort. The Court has found that Plaintiff failed to demonstrate any malice on the part of Cox, and will, therefore, grant summary judgment to Cox on Plaintiff's claim for punitive damages under Maine law. Plaintiff has conceded that punitive damages are not available against Defendant Town, and Defendant Lewsen is no longer a party to this suit. Therefore, the claim for punitive damages remains only against Cox.

"Under federal law, punitive damages are available in a § 1983 action upon a jury finding that Defendants acted with 'reckless or callous disregard for the plaintiff's rights [or an] intentional violation[ ] of federal law.'" *Comfort v. Town of Pittsfield,* 924 F.Supp. 1219, 1238 (D.Me. 1996) citing *Smith v. Wade,* 461 U.S. 30, 51, 103 S.Ct. 1625, 1637, 75 L.Ed.2d 632 (1983); *see also Davet v. Maccarone,* 973 F.2d 22, 27 (1st Cir.1992). Under Maine law, punitive damages are available upon a finding that a defendant acted with malice. *See Tuttle,* 494 A.2d at 1361. Material issues of fact exist which prevent the Court from granting summary judgment to Defendant Cox on Plaintiff's claim that

21. Defendant Town has only claimed only that it is not liable for punitive damages under the Maine Tort Claims Act. 14 M.R.S.A. § 8105(5). Plaintiff responds to Defendant Town's claim under the MTCA in a footnote in Plaintiff's brief, stating: "Defendants argue, and Plaintiff agrees, that the Town of Windham cannot be held liable for punitive damages under Federal [sic] or state theories of liability." Plaintiff's Opposition to Defendants' Motion for Summary Judgment at 17, n. 1 (Docket No. 6). Accordingly, the Court will grant summary judgment to the Town to the extent Plaintiff's Complaint claims punitive damages.

he engaged in reckless or callous disregard for Plaintiff's rights in violation of section 1983.

### IV. Order

Accordingly, it is **ORDERED** that Defendants' Motion for Summary be, and it is hereby,

(1) **GRANTED** as to Defendant Lewsen on Counts I and II;

(2) **GRANTED** as to Defendant Town of Windham on Counts I, II, V, VII and VIII;

(3) **GRANTED** as to Defendant Cox on that part of Count I alleging conspiracy under 42 U.S.C. §§ 1985 and 1986, excessive force under 42 U.S.C. § 1983, and Counts II, V, VII, and VIII;

(4) **DENIED** as to Defendant Cox on that part of Count I alleging violation of her federal civil rights, with regard to unlawful arrest under 42 U.S.C. § 1983, and Counts III, IV, and VI;

(5) **DENIED** as to Defendant Town of Windham on Counts III, IV, and VI.