**Richard N. SHEEHY, Shirley Sheehy, and Leah Sheehy, Plaintiffs, Appellants,**

v.

**TOWN OF PLYMOUTH and Rita Quinn, Defendants, Appellees.**

No. 98–2080.

United States Court of Appeals, First Circuit.

Heard March 2, 1999.

Decided Sept. 8, 1999.

Robert S. Wolfe for appellants.

Robert L. Kirby, Jr., with whom Robert P. Sherman and David B. Mack were on brief for appellees.

Before STAHL, Circuit Judge, MAGILL, Senior Circuit Judge,* and LIPEZ, Circuit Judge.

LIPEZ, Circuit Judge.

This case requires us to decide whether a police officer sued for making an allegedly illegal arrest can invoke the "related

crimes" defense in asserting qualified immunity. The defense, adopted by a number of other circuits, provides "that even where there is no probable cause to arrest the plaintiff for the crime charged, proof of probable cause to arrest the plaintiff for a related offense is also a defense which may entitle the arresting officer to qualified immunity." *Avery v. King,* 110 F.3d 12, 14 (6th Cir.1997). The district court adopted the related crimes defense and granted summary judgment for the defendant police officer. Although we conclude that a police officer is entitled to invoke the related crimes defense, we must vacate the district court's entry of summary judgment. There exists a genuine issue of material fact as to whether the defendant police officer, Rita Quinn, clearly did not have probable cause to arrest plaintiff Richard Sheehy for disorderly conduct, the crime cited by the officer as the basis for the arrest at the scene. We further conclude that the related crimes defense should not apply to assault and battery with a dangerous weapon, the crime charged at the police station after the arrest.

## I.

This case stems from an altercation between two neighbors in the town of Plymouth, Massachusetts.[1] Following a long and contentious relationship with Warren Baker, Richard Sheehy got into an argument with Baker on Baker's property. Baker punched Sheehy in the eye and, in an effort to stop Baker from hitting him again, Sheehy grabbed Baker's shoulder. Sheehy lost his balance and fell on top of Baker. Baker started yelling for someone to call the police.

A number of officers arrived at the scene. They were familiar with Baker, having been called to Baker's residence on a number of prior occasions, and they did

---

\* Of the Eighth Circuit, sitting by designation.

1. When reviewing a motion for summary judgment, we review all material facts in a light most favorable to the nonmoving party. *See Vargas–Badillo v. Diaz–Torres,* 114 F.3d 3, 4 (1st Cir.1997).

not take the situation very seriously. A sergeant at the scene questioned Sheehy about the disturbance and asked him if he was going to file a complaint. Sheehy informed the sergeant that he would not be filing a complaint.

Officer Quinn then arrived at the scene. She first went to Baker's house where Baker told her that Sheehy had assaulted and kicked him. Officer Quinn had been to Baker's house before to investigate disturbances, and had always found him to be truthful. Although she could smell alcohol on his breath, she did not think he was drunk. Officer Quinn then went across the street to Sheehy's driveway where Sheehy was washing his boat. There were four bystanders in the driveway, and one of them was shouting and visibly upset. Officer Quinn attempted to question Sheehy, but he refused to respond, telling Officer Quinn that he had already given his name and address to the sergeant. She told him that "I'm the investigating officer now, and I am not going to put up with this . . . you know, either you give me identification or I arrest you." Sheehy put his hands out and said, "Then just arrest me." Officer Quinn said, "You're under arrest." Sheehy asked what he was being arrested for and Officer Quinn responded: "For not giving me your name." Sheehy, a retired state trooper, told her she did not have the authority to arrest him for failure to provide his name. Officer Quinn's partner then told Sheehy that he was being arrested for being a disorderly person. Sheehy asked how he could be a disorderly person in his own yard and added, "What constitutes being disorderly, I haven't opened my mouth." Officer Quinn's partner responded, "Failure to give your name."

Sheehy was handcuffed and taken to the police station where he was charged with assault and battery with a dangerous weapon[2] and being a disorderly person. Sheehy pled not guilty at his arraignment. At a pretrial conference, the district attorney refused to prosecute and the charges were dismissed.

Sheehy then filed suit in Massachusetts state court against Officer Quinn and the town of Plymouth, pursuant inter alia to 42 U.S.C. § 1983, alleging that his arrest was in violation of the Fourth Amendment because Officer Quinn did not have probable cause to arrest him for disorderly conduct or assault and battery with a dangerous weapon. The case was subsequently removed to the federal district court for the District of Massachusetts. After removal, Officer Quinn filed a motion for summary judgment, claiming that she was entitled to qualified immunity. The district court agreed, adopting the related crimes defense. The district court concluded that Officer Quinn had probable cause to arrest Sheehy for simple assault and battery, and further concluded that assault and battery and the crime charged at the police station (i.e., assault and battery with a dangerous weapon) were clearly related. The district court entered a summary judgment against Sheehy on his one federal claim under 42 U.S.C. § 1983 and remanded the remaining state law claims for disposition in the state court. Sheehy now appeals.

## II.

The district court's entry of summary judgment is reviewed de novo. See *Vargas–Badillo v. Diaz–Torres*, 114 F.3d 3, 5 (1st Cir.1997). We consider whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). We review the record in a

2. Sheehy was wearing shower shoes at the time of the alleged assault on Baker. On this basis, he was charged with assault and battery with a dangerous weapon (shod foot). *See Commonwealth v. Zawatsky*, 41 Mass.App. Ct. 392, 670 N.E.2d 969, 974 (Mass.App.Ct. 1996) (shod foot may be dangerous weapon under Mass. Gen. Laws ch. 265, § 15A, depending on the manner and circumstances in which it is used).

light most favorable to the party opposing the summary judgment and we will indulge in all reasonable inferences in that party's favor. *See Rivera v. Murphy*, 979 F.2d 259, 261 (1st Cir.1992). Where there is no dispute over the underlying material facts, "a defendant's entitlement to qualified immunity is a question of law and is reserved for plenary review by this court." *Id.*

 Generally, government officials performing discretionary functions (such as arrests) are shielded from civil damages so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Vargas–Badillo*, 114 F.3d at 5 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). In evaluating the officer's conduct in question, we do not focus on the "official's subjective state of mind, such as bad faith or malicious intention...." *Floyd v. Farrell*, 765 F.2d 1, 4 (1st Cir.1985). "The *Harlow* standard requires that we make an objective analysis of the reasonableness of conduct in light of the facts actually known to the officer and not consider the individual officer's subjective assessment of those facts. Nor are actual motives for conduct to be considered in evaluating a qualified immunity defense." *Id.* at 6.

 Where an arrest is "challenged as unsupported by probable cause [it] is deemed 'objectively reasonable' unless 'there *clearly* was no probable cause at the time the arrest was made.'" *Topp v. Wolkowski*, 994 F.2d 45, 48 (1st Cir.1993) (quoting *Floyd*, 765 F.2d at 5). Probable cause to arrest exists where "the facts and circumstances within [the police officer's] knowledge and of which [she] had reasonably trustworthy information were sufficient to warrant a prudent [person] in believing that the [arrestee] had committed or was committing an offense." *Rivera*, 979 F.2d at 263 (quoting *United States v. Figueroa*, 818 F.2d 1020, 1023 (1st Cir. 1987)). "Probable cause is to be determined based on 'the collective knowledge and information of all the officers involved.'" *See United States v. Bizier*, 111 F.3d 214, 217 (1st Cir.1997) (quoting *United States v. Paradis*, 802 F.2d 553, 557 (1st Cir.1986)).

 Several circuits have held that "even where there is no probable cause to arrest the plaintiff for the crime charged, proof of probable cause to arrest the plaintiff for a related offense is also a defense which may entitle the arresting officer to qualified immunity." *Avery v. King*, 110 F.3d 12, 14 (6th Cir.1997); *see Kelley v. Myler*, 149 F.3d 641, 647–48 (7th Cir.1998) ("[E]ven if probable cause does not exist for the crime charged, proof of probable cause to arrest the plaintiff on a closely related charge is also a defense."); *United States v. Rambo*, 789 F.2d 1289, 1294 (8th Cir.1986) ("Where a defendant is arrested for the wrong offense, the arrest is still valid if probable cause existed to arrest the defendant for a closely related offense."). The related crimes defense asks "whether the conduct that served as the basis for the charge for which there was no probable cause could, in the eyes of a similarly situated reasonable officer, also have served as the basis for a charge for which there was probable cause." *Trejo v. Perez*, 693 F.2d 482, 486 (5th Cir.1982). In *Trejo*, although the court agreed that the police officer did not have probable cause to arrest the plaintiff for disorderly conduct for the plaintiff's refusal to identify himself to the police officer, that same conduct could have supported an arrest for violating a statute that required a person to respond to a request for identification. Therefore, a jury should have been able to decide whether a reasonable officer would have believed he had probable cause to arrest the plaintiff for a crime related to the crime offered as the justification for the arrest. *See id.*

 Our reading of the cases suggests that "relatedness" has two requirements. First, the crime with which the arrestee is

charged and the crime offered to the court as a justification for the arrest must relate to the same conduct. Second, as a corollary of this first requirement, the two crimes must share similar elements or be directed generally at prohibiting the same type of conduct. *See generally Avery,* 110 F.3d at 14–15; *Trejo,* 693 F.2d at 485–86. These requirements prevent the *"ex post facto* extrapolations of all crimes that might have been charged on a given set of facts at the moment of the arrest...." *Richardson v. Bonds,* 860 F.2d 1427, 1431 (7th Cir.1988). The related crimes defense, thus understood, "allows the arresting officer to choose which crime she will charge without having to charge every single offense sustainable on the facts, and yet does not open the door to the extrapolation of offenses in an effort to justify a sham arrest." *Biddle v. Martin,* 992 F.2d 673, 677 (7th Cir.1993) (internal quotation marks omitted).

The related crimes defense is consistent with the teachings of *Harlow v. Fitzgerald,* 457 U.S. 800, 815–19, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), which rejected an inquiry into a government official's subjective motivations and intentions and defined the limits of qualified immunity in objective terms. An officer's erroneous legal description of the basis for an arrest should not expose the officer to liability if another officer would have concluded that there was probable cause to arrest for a related offense on the basis of the same conduct. We agree that courts should not "make constitutional questions turn on the term chosen by police officers to describe their activity—officers who are accustomed to the vernacular of the police station and unschooled in the accepted constitutional vocabulary...." *Ralph v. Pepersack,* 335 F.2d 128, 134 (4th Cir.1964). Instead, we should consider whether the conduct in question would allow a reasonable officer to conclude that probable cause existed to arrest for the related crime offered as justification. *See Biddle,* 992 F.2d at 676–77 (collecting cases). We therefore adopt the related crimes defense in this circuit.

In the usual case involving the related crimes defense, the crime or crimes formally charged are identical to those cited by the officer at the time of the arrest. Thus, there is usually no need to ask whether the related crimes analysis should focus on the conduct underlying the crime cited by the officer at the time of the arrest or, instead, the conduct underlying the crime cited a short time later at the police station. The crimes are the same. Here that question must be asked because Officer Quinn said at the scene that she was arresting Sheehy for being a disorderly person in his interaction with her, but later at the police station he was also charged with assault and battery with a dangerous weapon because of his altercation with Baker. The district court concluded that it was appropriate to analyze the conduct underlying the assault and battery with a dangerous weapon charge lodged at the police station in applying the related crimes defense. We disagree.

When Officer Quinn arrived at the scene, she first interviewed Baker. He informed Officer Quinn that Sheehy had assaulted him. Officer Quinn then went across the street to continue her investigation in Sheehy's driveway. When Sheehy refused to cooperate, Officer Quinn arrested him for disorderly conduct on the basis of his conduct in the driveway. The record makes clear that Sheehy's interaction with Officer Quinn was the sole basis for the arrest. It was only later, at the police station, that Officer Quinn also charged Sheehy with both disorderly conduct and assault and battery with a dangerous weapon. In other words, the additional charge at the police station had nothing to do with the conduct for which Sheehy was actually arrested—his conduct in the driveway. The arrest charge and the charge lodged at the police station pertained to distinct events involving Sheehy's conduct with different people.

Although we are mindful that qualified immunity "gives ample room for mistaken

judgments," *Rivera*, 979 F.2d at 263, Officer Quinn did not merely give an erroneous legal description of the conduct she was witnessing or overlook an offense applicable to that conduct. Instead, following the arrest, Officer Quinn relied at the police station on prior conduct of Sheehy that unmistakably did not serve as the basis for the challenged arrest. Allowing such reliance would "open the door to the extrapolation of offenses in an effort to justify a sham arrest." *Biddle*, 992 F.2d at 677 (internal quotation marks omitted). We will not permit it.[3]

Our decision in *Santiago v. Fenton*, 891 F.2d 373 (1st Cir.1989), supports our conclusion that Officer Quinn may not offer the later charge at the police station to support her qualified immunity defense. In *Santiago*, the plaintiff was engaged in a snowball fight with his friends when he hit an unmarked police car. The plaintiff and his friends ran off. The officer followed the boys briefly, but then gave up. *See id.* at 377. Later, the police officer was in a nearby apartment complex and overheard the boys discussing the incident.[4] *See id.* At that point, the officer grabbed the plaintiff and an altercation ensued between the plaintiff and several officers. The plaintiff pushed the officers and made loud and obscene noises. The officers placed the plaintiff under arrest and he was transported to the police station, where he was charged with a misdemeanor offense of being a disorderly person for allegedly

shouting at the officers. *See id.* at 377, 383.

Santiago sued the officers pursuant to 42 U.S.C. § 1983. The officers argued that they were entitled to qualified immunity because, even in the absence of probable cause for the disorderly conduct charge relating to the incident in the apartment complex, they had probable cause to arrest for the earlier snowball incident. *See id.* at 383. Although we did not discuss the related crimes defense in *Santiago*, we rejected the officers' claim, noting that the officers had unambiguously testified that the snowball incident had nothing to do with the arrest, and that the plaintiff was arrested for striking and pushing the officers in the apartment building. *See id.* at 383. We would not permit the officers to validate the arrest retroactively based on earlier conduct that unmistakably did not serve as the basis for the challenged arrest. We have made the same judgment in this case.

In its grant of summary judgment for Officer Quinn, the district court questioned whether our analysis of qualified immunity in *Santiago v. Fenton* could be reconciled with the related crimes defense. We see no conflict. Contrary to the suggestion of the district court, our reliance on the testimony of the officers about the basis for the arrest in *Santiago* does not implicate the officers' subjective motivations for arresting the plaintiff, nor does it condition the

---

**3.** Of the related crimes cases we have reviewed, we have found only one case where there was a difference between the officer's stated basis for arrest and the crimes later charged. *See Gassner v. City of Garland*, 864 F.2d 394 (5th Cir.1989). The plaintiff Gassner, who was driving erratically because he was searching for his lost child, was pulled over by a police officer. In his agitated state, Gassner refused to cooperate with the officer, who arrested him on the stated basis that he was speeding. At the police station, the plaintiff was charged with both disorderly conduct and speeding. *See id.* at 396. The court concluded that summary judgment should have been entered for the police officer on his qualified immunity defense on the ground that he had probable cause to arrest

for an offense related to the disorderly conduct charge—namely, failing to comply with the order of a police officer. In relating the disorderly conduct charge to the failure to comply with a police order, the court did not mention the difference between the original basis for arrest (speeding) and the crime charged at the police station. We think that difference is significant in this case, and we will not overlook it.

**4.** It is not clear exactly how much time elapsed between the snowball incident and the incident in the apartment building. According to the plaintiff's statements, a considerable time had elapsed.

availability of the immunity defense on the legal correctness of the criminal charge articulated by the officers in describing the conduct that prompted their arrest decision. We used the statements of the officers in *Santiago* about the basis for the arrest as objective indicators of the conduct underlying the arrest in order to understand which of two discrete incidents prompted the arrest. Without such an inquiry, we could not have known which facts to consider in determining whether the arrest was made pursuant to probable cause. We have used the statements of Officer Quinn and her partner about the basis for the arrest of Sheehy in the same fashion.

### III.

▮ The district court used the assault and battery with a dangerous weapon charge, lodged at the police station, as the basis for its conclusion that Officer Quinn had probable cause to arrest Sheehy for the related offense of assault and battery. Thus the court did not consider whether Officer Quinn clearly did not have probable cause to arrest Sheehy for disorderly conduct, the stated basis for the arrest. Given our rejection of the court's application of the related crimes defense to the charge lodged at the police station, we must consider whether Officer Quinn had probable cause to arrest Sheehy for the crime of disorderly conduct.[5]

▮ Sheehy was charged with a violation of Mass. Gen. Laws ch. 272, § 53, which makes it a crime to be an "idle and disorderly person[ ]." A person is disorderly under the statute "if, with purpose to cause public[6] inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: (a) engages in fighting or threaten-

---

**5.** Because Officer Quinn did not assert a related crimes defense based on a crime related to disorderly conduct, we need not consider whether she had probable cause to arrest Sheehy for any such related crime.

**6.** " 'Public' means affecting or likely to affect persons in a place to which the public or a

ing, or in violent or tumultuous behavior . . . or (c) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor." *Commonwealth v. Feigenbaum*, 404 Mass. 471, 536 N.E.2d 325, 327 (Mass.1989) (quoting *Alegata v. Commonwealth*, 353 Mass. 287, 231 N.E.2d 201, 211 (Mass.1967)). The conduct to which the statute applies has been described with some specificity:

> [T]he type of conduct which the disorderly person provision of § 53 reaches is that conduct which by its very nature involves the use of physical force or violence or any threat to use such force or violence if that threat is objectively possible of immediate execution. Also covered is "tumultuous behavior," which while perhaps not physically violent, may nevertheless be characterized as involving riotous commotion and excessively unreasonable noise so as to constitute a public nuisance. Conduct which creates a condition of physical menace to others is also reached. . . .

*Commonwealth v. A Juvenile*, 368 Mass. 580, 334 N.E.2d 617, 628 (Mass.1975) (citations omitted). That description permits no argument that a refusal to give one's name to a police officer is disorderly conduct.

▮ When a defendant moves for summary judgment on qualified immunity grounds, "we must credit the plaintiff's version of defendants' actions to the extent that plaintiff has appropriately supported his version." *Amsden v. Moran*, 904 F.2d 748, 752–53 (1st Cir.1990). In Sheehy's deposition he explained that Officer Quinn asked him his name, but he refused to tell her since he had already given another officer the information. He testified that

---

substantial group has access." *Alegata v. Commonwealth*, 353 Mass. 287, 231 N.E.2d 201, 211 (Mass.1967). It is not clear as a matter of Massachusetts law whether Sheehy's driveway is a public place under that definition.

she once again demanded that Sheehy provide her with his name or she would place him under arrest. Sheehy refused and put out his hands. Officer Quinn arrested him. On Sheehy's version of the facts, he demonstrated no conduct that could be considered "disorderly"—he did not act with or threaten force or violence, his behavior was not "tumultuous," and he did not create a physical menace to others.

Therefore, on the basis of this record, Officer Quinn should not have been granted summary judgment. If a jury were to believe Sheehy's version of events, it reasonably could find that Officer Quinn clearly did not have probable cause to arrest him for disorderly conduct. According to Officer Quinn, however, Sheehy not only refused to give his name, but also paced around in an agitated fashion when she tried to talk to him, displayed aggressive body language, and advanced toward her "in a very threatening manner." A jury believing that version of the facts could reasonably conclude that it was not clear that Officer Quinn lacked probable cause to arrest Sheehy for disorderly conduct. We must therefore vacate the judgment of the district court and remand.

Judgment *vacated*. **Remanded** for further proceedings.